

April 24, 2025

<u>**VIA ECF**</u>
Honorable Eric N. Vitaliano
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**RE:**   *Roosevelt Road Re, Ltd. et al. v. Liakas Law, P.C. et al.*; 1:25-cv-00300-ENV-RML

Dear Judge Vitaliano:

This firm represents Plaintiffs Roosevelt Road Re, Ltd. ("Roosevelt"), Tradesman Program Managers, LLC ("Tradesman") and Ionian Re, LLC ("Ionian"). Pursuant to Rule III(A) of Your Honor's Individual Practice Rules, Plaintiffs submit this response to Defendants Liakas Law, P.C. and Dean N. Liakas (collectively, the "Liakas Defendants") request (ECF No. 82) to schedule a pre-motion conference. For the reasons discussed below, the Liakas Defendants' request for a pre-motion conference and any anticipated motion to dismiss should be denied.

On January 17, 2025, Plaintiffs filed their Original Complaint (the "Complaint") (ECF No. 1). The Complaint describes a massive fraud scheme (the "Fraud Scheme") in which the Liakas Defendants, among others, have, since 2018 to the present, filed and prosecuted *thousands* of fraudulent workers' compensation claims and personal injury lawsuits in New York to defraud Plaintiffs and others for Defendants' financial benefit [Compl. ¶¶ 57-356]. These claims are predicated upon staged work-place accidents that allegedly entailed significant, costly, and unnecessary medical procedures, which were used to inflate the settlement value of the claims and the lawsuits pursued by Defendants [*Id.*]. The costs of the Fraud Scheme have been and continue to be borne by Plaintiffs, insurance companies, and the citizens of New York. This lawsuit (and similar lawsuits filed in this district) seek to hold Defendants liable for the Fraud Scheme.

First, Plaintiffs possess standing under RICO, which requires that "a plaintiff plead, at a minimum, (1) the defendant's violation of § 1962; (2) an injury to the plaintiff's business or property; and (3) causation of the injury by the defendant's violation.'" *DDR Constr. Servs. v. Siemens Indus.*, 770 F.Supp.2d 627, 649-50 (S.D.N.Y. 2011) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 (2d Cir. 2003)). The Complaint pleads Defendants' racketeering activity violated Sections 1962(c) and 1962(d) of RICO, which injured Plaintiffs' business or property [Compl. ¶¶ 357-68]. Roosevelt and Ionian have suffered damages in the form of the mandatory reimbursement payments they made to insurers in connection with the fraudulent general liability and workers'

**PENNSYLVANIA  I  NEW YORK  I  NEW JERSEY  I  DELAWARE  I  WEST VIRGINIA  I  FLORIDA  I  TEXAS**

**The Willis Law Group, PLLC**  |  1985 Forest Lane, Garland, Texas 75042
(214) 736.9433 – Main  |  (214) 736.9994 - Facsimile
TheWillisLawGroup.com  |  E-Service Address: service@thewillislawgroup.com

Honorable Eric N. Vitaliano
April 24, 2025
Page 2 of 4

compensation claims involved in the Fraud Scheme and the unnecessary litigation expenses they incurred defending the fraudulent workers' compensation claims and personal injury lawsuits that otherwise would be barred by operation of New York law [Compl. ¶¶ 335-56]. Tradesman has suffered damages in the (1) expenses it incurred to administer, investigate, and provide support services for the fraudulent claims, (2) business it lost as a result of the Fraud Scheme, and (3) payment of increased commissions to reinsurers because of the artificially inflated loss ratios caused by the Fraud Scheme [*Id.*]. Plaintiffs' damages are not contingent upon injuries to other parties: Roosevelt and Ionian were contractually obligated to make reimbursements and to defend personal injury lawsuits and workers' compensation claims and Tradesman's administrative, investigative, and support services expenses and increased commissions were borne by it alone [Compl. ¶¶ 335, 336, 340, 341, 350, 351]. These injuries were caused by, *inter alia*, Liakas Defendants' predicate acts. Consequently, Plaintiffs have standing under (1) Article III because their injuries are directly traceable to Liakas Defendants' conduct and a favorable decision will redress Plaintiff' injuries and (2) RICO because a direct relationship exists between the injurious conduct of Liakas Defendants and Plaintiffs' damages. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10 (2010). Finally, contrary to Liakas Defendants' assertion, the Complaint repeatedly alleges their conduct contributed to inflating the settlement value(s) of the Claimants' lawsuits and litigation-related expenses spent combatting fraudulent lawsuits and claims like those at issue here are injuries under RICO. *Angermeir v. Cohen*, 14 F.Supp.3d 134, 153 (S.D.N.Y. 2014).

Second, the Court can reasonably infer from the Complaint's allegations that the Liakas Defendants violated Section 1962(c) as follows:

1. An association-in-fact enterprise exists among Defendants. *Boyle v. United States*, 556 U.S. 938, 946. First, the enterprise has a purpose: its participants share in the economic benefits generated by the fraudulent scheme [Compl. ¶¶ 57, 66, 67]. Second, the Complaint alleges a structure, hierarchy, and relationships among Defendants, who operated as a "unit" by performing specific roles [Compl. ¶¶ 59-92, 188-329]. Third, the Complaint alleges the enterprise has sufficient longevity because it began on or before 2018 and has permitted Defendants to participate in those affairs through a pattern of racketeering [Compl. ¶¶ 93, 330].

2. Liakas Defendants were members of the enterprise because they participated in the conduct of the enterprise's affairs by prosecuting Claimants' personal injury lawsuits and workers' compensation claims, directing Runners to the Claimants to stage fake accidents, directing Claimants to seek medical treatment from Medical Provider Defendants, working with Funding Defendants to fund the enterprise, and transmitting and receiving documents that contained false information regarding the Claimants' accidents and injuries [Compl. ¶¶ 59, 189-96]; *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

3. Liakas Defendants engaged in "racketeering activity" by committing at least thirty-eight instances of federal mail and wire fraud [Compl. ¶ 330(i)-(viii)]; *Sykes v. Mel Harris & Assocs., LLC*, 757 F.Supp.2d 413, 425 (S.D.N.Y. 2010). These predicate acts relate just to the eight exemplars in the Complaint (not the entire Fraud Scheme) and satisfy the heightened pleading requirement of FED. R. CIV. P. 9(b) by stating the content of the communications, who was involved, where and when they took place, and why they were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). Contrary

Honorable Eric N. Vitaliano
April 24, 2025
Page 3 of 4

to Liakas Defendants' assertion, litigation activities qualify as predicate acts when, as seen here, the scheme involves more than just litigation activities (e.g., staging fake accidents) and uses the court system to perpetuate a RICO scheme. *Sykes v. Mel Harris & Assocs., LLC,* 757 F.Supp.2d at 418-20.

4. Liakas Defendants engaged in the requisite pattern of racketeering activity. The acts of mail and wire fraud demonstrate this type of fraudulent activity is a regular way of operating their business and this past conduct projects into the future with a threat of repetition. *Cofacredit, S.A., Inc. v. Windsor Plumbing Supply Co.,*187 F.3d 229, 243 (2d Cir. 1999). Unless the scheme is halted, Liakas Defendants will continue to utilize the New York state court and workers' compensation systems to profit from the RICO scheme. *See GICC Cap. Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 466 (2d. Cir. 1995), *cert. denied*, 518 U.S. 1017 (1996).

Third, because the Complaint sufficiently pleads a substantive RICO claim, the RICO conspiracy claim is viable, too.

Fourth, because the RICO claims are viable, the Court should permit Plaintiffs' request for declaratory relief and exercise supplemental jurisdiction over the state law claims, which derive "from a common nucleus of operative fact" with the RICO claims and form part of the same case or controversy. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). In addition, for the reasons stated above, the elements of the common law fraud claim have been adequately pled, including the misrepresentations by Liakas Defendants, which have been pled with particularity.

Fifth, Plaintiffs do not seek to circumvent enforceable settlement agreements. Any claims that were settled and released by the primary insurer are not subject to dismissal because the fraud at issue in this lawsuit was neither the basis for the Claimants' lawsuits nor an issue of which Plaintiffs were aware when those lawsuits were settled. *See e.g., Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (stating courts have declined to set aside releases based on fraudulent inducement when parties were aware of the fraud or the fraud itself was the basis for the original lawsuit that was settled). Further, a release, like any other contract, may be set aside on the basis of fraud. *Ford v. Phillips*, 121 A.D.3d 1232, 1234 (3d Dept. 2014).

Sixth, the RICO and fraud claims are timely. Civil RICO actions are subject to a four-year limitations period based on when the plaintiff discovers, or should have discovered, an injury caused by the predicate violations. *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995). Common law fraud must be commenced within six years of the commission of the fraud, or two years from the date the fraud could reasonably have been discovered, whichever is longer. *Von Blomberg v. Garis*, 44 A.D.3d 1033 (2d Dept. 2007). Here, Defendants concealed their fraud through the submission of facially valid invoices and documentation to Plaintiffs and others [Compl. ¶¶ 333, 334]. Consequently, the statutes of limitations did not begin until Plaintiffs discovered Defendants' fraud, which occurred within the limitations time periods. Furthermore, Plaintiffs' claims are ripe for adjudication. Plaintiffs have already incurred many of the above-described expenses and damages notwithstanding the fact that Claimants' underlying personal injury lawsuits have not settled.

Honorable Eric N. Vitaliano
April 24, 2025
Page 4 of 4

Respectfully Submitted,

*/s/ William J. Clay*
William J. Clay

cc:     All Counsel of Record (via ECF)