# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

ROOSEVELT ROAD RE, LTD.; TRADESMAN PROGRAM MANAGERS, LLC; and IONIAN RE, LLC,

        Plaintiffs,

    v.

LIAKAS LAW, P.C.; DEAN N. LIAKAS; JOHN DOE NOS. 1-25; XYZ CORPORATION NOS. 1-25; BROOKLYN MEDICAL PRACTICE, P.C.; SAYEEDUS S. SALEHIN, M.D.; ADVANCED ORTHOPEDICS AND JOINT PRESERVATION P.C.; STAN AVSHALUMOV, D.O.; COMMUNITY MEDICAL IMAGING OF BROOKLYN P.C.; ANDREW J. MCDONNELL, M.D.; ORTHOPAEDICS SPINE & SPORTS MEDICINE, LLC, s/d/b/a TOTAL ORTHOPAEDICS & SPORTS MEDICINE; VADIM LERMAN, D.O.; ABHISHEK KUMAR, M.D.; SHIVEINDRA JEYAMOHAN, M.D.; BIG APPLE PAIN MANAGEMENT, P.L.L.C.; RICHARD APPLE, M.D.; NORTH SHORE FAMILY CHIROPRACTIC, P.C.; TODD LAWRENCE LEBSON, D.C.; UNICORN ACUPUNCTURE, P.C.; DEKUN WANG, L.Ac; ENGLINTON MEDICAL, P.C.; SHIARREE EVARISTO, P.T.; ARKADIY SHUSTERMAN, D.O.; COUNTER POINT MEDICAL, P.C.; UPWARD MEDICAL, P.C.; MARK KOSTIN, M.D.; BROOKLYN PREMIER ORTHOPEDICS AND PAIN MANAGEMENT P.L.L.C.; FJ ORTHOPAEDICS AND PAIN MANAGEMENT P.L.L.C.; VAGMIN VORA, M.D.; JONATHAN SIMHAEE, M.D.; STEVEN HOROWITZ, M.D.; BL PAIN MANAGEMENT, P.L.L.C. d/b/a PAIN MANAGEMENT NYC; PAIN PHYSICIANS NY, P.L.L.C.; BOLESLAV KOSHARSKYY, M.D.; ROMAN SHULKIN, M.D.; LEONID REYFMAN, M.D.; MCCULLOCH ORTHOPAEDIC SURGICAL SERVICES, P.L.L.C. s/d/b/a NEW YORK SPORTS AND JOINTS ORTHOPAEDIC SPECIALISTS; KENNETH McCULLOCH-OTERO, M.D.; DAVID R. CAPIOLA, M.D.; GOTHAM NEUROSURGERY, P.L.L.C.; ANDERS COHEN, D.O.; GARDEN STATE ORTHOCARE LLC, d/b/a ORTHOCARE SURGICAL; RANDALL EHRLICH, M.D.; PRECISION PAIN MANAGEMENT, P.C.; and ARI BENJAMIN LERNER M.D.,

        Defendants.

Case No. 1:25-cv-00300-ENV-RML

ORAL ARGUMENT REQUESTED
Date of Service: June 23, 2025

---

# MEMORANDUM OF LAW IN SUPPORT OF LIAKAS LAW, P.C., AND DEAN N. LIAKAS' MOTION TO DISMISS

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
James M. Catterson
Christopher C. Caffarone
Brianna S. Walsh
Stephanie LaGumina
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax:     212.858.1500
james.catterson@pillsburylaw.com
christopher.caffarone@pillsburylaw.com
brianna.walsh@pillsburylaw.com
stephanie.lagumina@pillsburylaw.com
*Attorneys for Defendants*
*Liakas Law, P.C., and Dean N. Liakas*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS.........................................................................................4

    A. The Parties ..................................................................................................4

    B. The Alleged Fraudulent Scheme ..................................................................5

    C. Plaintiffs' Alleged Damages ........................................................................6

    D. Plaintiffs' Pattern of Duplicative Complaints ...............................................7

    E. Judge Gonzalez's June 19, 2025, Memorandum & Order Dismissing Plaintiffs' Related Case ......................................................................................................9

ARGUMENT .......................................................................................................10

POINT I  PLAINTIFFS LACK STANDING TO BRING THIS LAWSUIT ...............................10

    A. Legal Standard.........................................................................................10

    B. Plaintiffs Lack RICO Standing ..................................................................11

        a.  Plaintiffs do not allege that Defendants' conduct proximately caused their injuries ...11

    C. Plaintiffs Lack Article III Standing .............................................................14

        a.  Plaintiffs fail to plead a redressable injury-in-fact........................................15
        b.  Plaintiffs fail to trace their alleged injuries to the challenged conduct........................17

POINT II  PLAINTIFFS FAIL TO STATE A FEDERAL RICO CLAIM .................................18

    A. Legal Standard.........................................................................................18

    B. Plaintiffs Fail to State a RICO Claim Pursuant to 18 U.S.C. § 1962(c) ............19

        a.  The Complaint fails to allege an association-in-fact enterprise....................19
        b.  Plaintiffs fail to plausibly allege predicate acts or a pattern of racketeering activity ..22

    C. Plaintiffs Fail to State a RICO Conspiracy Claim Pursuant to § 1962(d) .........25

POINT III PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED ...............................26

    A. The Court Should Decline Supplemental Jurisdiction over Plaintiffs' State Law Claims 26

    B. Plaintiffs Fail to Plead Any of the Requisite Elements of Common Law Fraud with Particularity ...........................................................................................27

    C. Plaintiffs' Unjust Enrichment Claim is Duplicative.......................................28

    D. Plaintiffs' Claim for Declaratory Relief is Duplicative ..................................29

POINT IV PLAINTIFFS' CLAIMS ARE BARRED BY SETTLEMENT ..................................29

    A. Plaintiffs May Not Circumvent Settlement Agreements Resolving the Underlying Claims ............................................................................................29

CONCLUSION.................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abbott Lab'ys. v. Adelphia Supply USA*,
No. 15-cv-5826(CBA)(LB), 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ............................20, 21

*Allstate Ins. Co. v. Mazzola*,
175 F.3d 255 (2d Cir. 1999) ....................................................................................... 16

*Anderson Grp. LLC v. City of Saratoga Springs*,
805 F.3d 34 (2d Cir. 2015)......................................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 19

*Bohnet v. Valley Stream Union Free Sch. Dist. 13*,
30 F. Supp. 3d 174 (E.D.N.Y. 2014) .......................................................................... 19

*Boyle v. United States*,
556 U.S. 938 (2009) .................................................................................................... 20

*Calcano v. Swarovski N. Am. Ltd.*,
36 F.4th 68 (2d Cir. 2022) .......................................................................................... 10

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
271 F3d 374, 380 (2d Cir. 2001) ................................................................................ 11

*Comora v. Franklin*,
171 A.D.3d 851 (2d Dep't 2019).................................................................................28

*Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*,
280 F. Supp. 3d 349 (E.D.N.Y. 2017)........................................................................25

*Cont'l Cas. Co. v. Stronghold Ins. Co.*,
77 F.3d 16 (2d Cir. 1996)............................................................................................ 15

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018)..........................................................................................20

*Dixon v. von Blanckensee*,
994 F.3d 95 (2d Cir. 2021)..........................................................................................18

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
   594 F. Supp. 2d 308 (E.D.N.Y. 2009) .......................................................................23

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
   726 F. Supp. 2d 225 (E.D.N.Y. 2010) .......................................................................11

*Dynarex Corp. v. Farrah*,
   No. 18-cv-7072 (VB), 2019 WL 2269838 (S.D.N.Y. May 28, 2019) ....................20

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ....................................................................................21

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ................................................................................................17

*Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd.*,
   No. 11-cv-5802(PKC), 2014 WL 4175914 (E.D.N.Y. Aug. 20, 2014) ..................29

*Gov't Emps. Ins. Co. v. Simakovsky*,
   No. 14-cv-3775(KAM)(SMG), 2015 WL 5821407 (E.D.N.Y. Oct. 15, 2015) ......27

*Hecht v. Com. Clearing House, Inc.*,
   897 F2d 21, 23 (2d Cir. 1990) ..........................................................................11, 14

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010) ..............................................................................................11, 12

*Hibbert v. Cap. One Auto Fin.*,
   No. 1:23-cv-07538(OEM)(TAM), 2024 WL 3498536 (E.D.N.Y. July 22, 2024)..................11

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ...................................................................................... 11, 12, 13

*Intercity Logistics LLC v. Cargo World USA, Inc.*,
   No. 24-cv-02138 (OEM) (RML), 2025 WL 1043623 (E.D.N.Y. Apr. 8, 2025)....................28

*Jones v. Ford Motor Credit Co.*,
   358 F.3d 205 (2d Cir. 2004) ....................................................................................26

*Jordan v. Tilzer*,
   No. 21-1938, 2022 WL 16544335 (2d Cir. Oct. 31, 2022).....................................19

*Kim v. Kimm*,
   884 F.3d 98, 104 (2d Cir. 2018)……………………………………………………..24

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006) ....................................................................................26

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ........................................................................27

*Luckett v. Bure*,
290 F.3d 493 (2d Cir. 2002) ...........................................................10

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .........................................................................17

*Lundy v. Cath. Health Sys. of Long Island, Inc.*,
711 F.3d 106 (2d Cir. 2013) ...........................................................19

*Lutz v. Lakeside Beikirk Nursing Home*,
301 A.D.2d 688 (3d Dep't 2003).....................................................30

*Malek v. AXA Equitable Life Ins. Co.*,
No. 20-cv-4885 (DG) (AYS), 2023 WL 2682408 (E.D.N.Y. Mar. 29, 2023) .................21, 28

*McLaughlin v. Anderson*,
962 F.2d 187 (2d Cir. 1992) ...........................................................24

*Med. Marijuana, Inc. v. Horn*,
145 S. Ct. 931 (2025) .......................................................................11

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993) ...........................................................23

*Moore v. PaineWebber, Inc.*,
189 F.3d 165 (2d Cir. 1999) ...........................................................19

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017).........................................19, 21

*Nakahara v. Bal*,
No. 97-cv-2027 (DLC), 1998 WL 35123 (S.D.N.Y. Jan. 30, 1998).......................24

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
No. 19-cv-1861(MKB)(RML), 2021 WL 960394 (E.D.N.Y. Mar. 15, 2021) .......................22

*Plante v. Dake*,
621 Fed. App'x 67 (2d Cir. 2015) ...................................................14

*United States v. Rainford*,
110 F.4th 455 (2d Cir. 2024) ...........................................................22

*Roosevelt Road Re, Ltd. et al. v. Subin et al.*,
No. 24-cv-05033 (HG), 2025 WL 1713109 (E.D.N.Y. Jun. 19, 2025) ........................... *passim*

*Simon v. E. Kentucky Welfare Rits. Org.*,
　　426 U.S. 26 (1976) ...................................................................................17

*Singh v. NYCTL 2009-A Tr.*,
　　No. 14-cv-2558, 2016 WL 3962009 (S.D.N.Y Jul. 10, 2016).....................28

*Singh v. T–Mobile*,
　　232 A.D.3d 662 (2d Dep't 2024)...............................................................27

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
　　17 F. Supp. 3d 207 (E.D.N.Y. 2014).........................................................26

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016), as revised (May 24, 2016) ......................................15

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
　　120 F.4th 59 (2d Cir. 2024) ......................................................................22

*Steel Co. v. Citizens for a Better Env't.*,
　　523 U.S. 83 (1998) ...................................................................................18

*United Mine Workers of Am. v. Gibbs*,
　　383 U.S. 715 (1966) .................................................................................26

*Unigard Sec. Ins. Co. v. N. River Ins. Co*.,
　　79 N.Y.2d 576 (1992) ..............................................................................30

*United States v. Applins*,
　　637 F.3d 59 (2d Cir. 2011)........................................................................25

*United States v. Bank of New York*,
　　14 F.3d 756 (2d Cir. 1994)........................................................................30

*United States v. Kukushkin*,
　　61 F.4th 327 (2d Cir. 2023) ......................................................................25

*United States v. Laurent*,
　　33 F.4th 63 (2d Cir. 2022) ...................................................................23, 25

*United States v. Turkette*,
　　452 U.S. 576 (1981) .............................................................................19, 21

*Williams v. Affinion Grp., LLC*,
　　889 F.3d 116 (2d Cir. 2018) ..................................................................23, 27

<u>Statutes and Codes</u>

28 U.S.C.A. § 1367(a)....................................................................................26

28 U.S.C.A. § 1367(c)(1)–(4) ................................................................26

18 U.S.C. § 1341 .........................................................................19, 23

18 U.S.C. § 1343 .........................................................................19, 23

18 U.S.C. § 1962(c) ....................................................................... *passim*

18 U.S.C. § 2201(a) .............................................................................29

N.Y. Ins. Law § 1308(e)(1)(A) .............................................................16

N.Y. Penal Law § 215.00 (McKinney) ...................................................25

N.Y. Lab. Law § 240(1) .........................................................................3

N.Y. Workers' Comp. Law § 23 (McKinney)……………………………...30

N.Y. Workers' Comp. Law § 32(c) (McKinney)……………………………..30

N.Y. Workers' Comp. Law § 13-5(1) (McKinney) ……………………………28

## Rules and Regulations

Fed R. Civ. P. 9(b) ......................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) .....................................................................1, 10

Fed. R. Civ. P. 12(b)(6) .....................................................................1, 18

## Other Authorities

N.Y. Workers' Comp. Bd., Form C-32 Waiver Agreement – Section 32, available at https://www.wcb.ny.gov/ content/main/forms/c32 (last visited Jun. 23, 2025)
....................................................................................................29

N.Y. State Dep't of Fin. Servs., Requirements for Reinsurance Agreements, Letters of Credit and Pooling Arrangements, available at https://www.dfs.ny.gov/apps_and_licensing/property_insurers/licensing_ domestic_foreign/reinsurance_agreements (last visited Jun. 23, 2025)....................................15

*Plagarism Checker*, https://plagiarismcheckerx.com (last visited Jun. 23, 2025)............................8

*Turnitin*, iThenticate, https://www.ithenticate.com (last visited Jun. 23, 2025).............................7

Defendants Liakas Law, P.C. (hereinafter referred to as the "Firm"), and Dean N. Liakas (hereinafter referred to as "Mr. Liakas," and together with the Firm, "Liakas Law"), by and through their attorneys, Pillsbury Winthrop Shaw Pittman LLP, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint (hereinafter referred to as the "Complaint") by Plaintiffs Roosevelt Road Re, Ltd. (hereinafter referred as "Roosevelt"), Tradesman Program Managers, LLC (hereinafter referred to as "Tradesman"), and Ionian Re, LLC (hereinafter referred to as "Ionian," and collectively with Roosevelt and Tradesman, "Plaintiffs"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as the "FRCP").

## PRELIMINARY STATEMENT

This lawsuit is one in a long and continuing series of attempts by the same Plaintiffs to target the attorneys and medical providers who serve injured construction workers in the State of New York. In every instance, Plaintiffs allege the same conspiracy under the Racketeer Influenced and Corrupt Organizations Act (hereinafter referred to as "RICO"); all that changes are the names of the alleged participating parties. In this action, Plaintiffs allege that Liakas Law, along with over forty medical facilities, professionals, and doctors, are engaged in a sprawling scheme to defraud Plaintiffs by hiring unspecified "Runners" to encourage unnamed construction workers to stage workplace accidents and seek unnecessary medical treatment in an effort to extract inflated settlements from construction employers through unidentified primary insurers. Compl. (ECF No. 1) at ¶¶ 60, 90–93. Plaintiffs, however, are neither those construction employers nor their primary insurance carriers. Instead, Plaintiffs are two reinsurers and a managing agent, who do not claim that they have actually contributed to such an "inflated settlement" in any of the eight underlying cases Plaintiffs allude to.

Plaintiffs lack standing to pursue their claims. Their purported injuries are unspecified reimbursements to unnamed primary insurers for generally increased litigation costs and claims investigation expenses. Plaintiffs incurred such costs and expenses because they are contractually obligated to do so when the primary insurer decides in the first instance to defend or investigate a claim on behalf of the insured construction employer. Nonetheless, Plaintiffs attribute their claimed damages to industry-wide increases in "fraudulent" claims.

Plaintiffs' self-serving speculation that those costs are the downstream consequences of far-reaching "fraud" initiated by officers of the court across this State does not demonstrate that Defendants' alleged conduct herein proximately caused Plaintiffs' business woes, as required to establish standing under RICO. In fact, District Judge Hector Gonzalez recently dismissed one of Plaintiffs' numerous RICO suits on precisely that ground. As Judge Gonzalez held, "as a reinsurer, [Roosevelt's] injuries are definitionally '[m]ultiple steps' away from the alleged fraud." *See Roosevelt Road Re, Ltd. et al. v. Subin et al.*, No. 24-cv-05033 (HG), 2025 WL 1713109, at *6 (E.D.N.Y. Jun. 19, 2025) (internal citation omitted). Tradesman fares even worse. As "an administrative intermediary" in the business of investigating insurance claims, it cannot claim it "suffers a RICO injury when a fraudster targets one of its customers." *Id.* at *5. Likewise, Plaintiffs' grievances regarding the increased costs of performing their own reinsurance contracts are not concrete and particularized injuries for purposes of Article III.

Plaintiffs' allegations are based on nothing more than rank speculation and legal conclusion, utterly lacking in the particularity required by FRCP 9(b). The sole plausible factual allegation Plaintiffs make against Liakas Law is that the Firm and Mr. Liakas represent construction workers who claim they suffered serious injuries. Further, Plaintiffs allege that Liakas Law is prosecuting their claims and serving as zealous advocates. That an insurer

disagrees with the cause or extent, or even the existence, of an injury, or debates the necessity of medical treatment does not transmogrify an attorney's prosecution of a tort claim into far-reaching fraud. Rather, it summarizes the posture of virtually every personal injury case in New York State. Plaintiffs cannot manufacture a RICO conspiracy based in fraud by simply labeling standard tort practice as "fraudulent," even when they choose to do so, as here, over 500 times.

Plaintiffs also fail to demonstrate that this Court should exercise supplemental jurisdiction over their common law fraud claims. They offer no reason why this Court should address an unnamed entity's hypothetical fraud defenses and counterclaims in pending—and, in some cases, already resolved—New York State tort proceedings.

As of the date of this filing, Plaintiffs have filed at least six duplicative lawsuits against other prominent tort firms representing injured workers. Each contains the same boilerplate allegations and conspiracy flow charts Plaintiffs submit here. In Plaintiffs' estimation, nearly every major tort firm in New York City is engaged in a vast conspiracy to defraud insurance companies by recruiting countless construction workers to fake injuries and seek unnecessary medical treatment to extract larger settlements from primary insurers. Plaintiffs cannot claim that they have ever contributed to any such settlement, so they further advance the absurd theory that the defendants they target somehow intended to drive up Plaintiffs' litigation fees and investigation expenses by inundating the entire insurance industry with a barrage of fake claims.

The true impetus for Plaintiffs' course of conduct is plain. With legislative efforts to abolish New York's strict liability Labor Law statute, *see* N.Y. Lab. Law § 240(1), known as the "Scaffold Law," having failed, Plaintiff reinsurers have pivoted to directly targeting the law firms and medical providers that serve injured construction workers. Thus, Plaintiffs target tort firms such as Liakas Law and doctors who provide care to those firms' clients to intimidate workers'

3

advocates and chill litigation that threatens to hurt the insurance industry's bottom line. Plaintiffs' frivolous, copy-and-paste litigation strategy does not pass muster under federal law. One court in this District has already decided that Plaintiffs lack standing to bring these actions, and its reasoning applies in equal force here.

For the reasons discussed herein, Liakas Law respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

**STATEMENT OF FACTS**

**A.      The Parties.**

Roosevelt is a Bermuda-based reinsurer.  Roosevelt alleges it underwrites policies and provides reinsurance that covers various workers' compensation claims and personal injury lawsuits.  Compl. at ¶¶ 3, 335.  Tradesman is Roosevelt's managing agent, providing management services including "general liability and workers' compensation services from underwriting through claims handling and subsequent administrative and legal actions, specifically focusing on safety management and effective handling of claims within the construction industry." *Id.* at ¶¶ 4, 350.  Ionian is a Vermont-based reinsurer.  Ionian alleges it underwrites policies and provides reinsurance that covers personal injury lawsuits. *Id.* at ¶¶ 5, 340.

Plaintiffs filed their 201-page Complaint against more than forty defendants and twenty five "John Does" on January 17, 2025.  Therein, Plaintiffs organize the Defendants, comprised of independent doctors, lawyers, and medical professionals, into four categories: Legal Service Defendants, Runner Defendants, Funding Defendants, and Medical Provider Defendants.  At the outset, the Runner and Funding Defendants are not named Defendants.  They are unidentified individuals who allegedly recruited and supported undocumented workers.  The Firm, a prominent personal injury law firm litigating claims before various courts in this State and the

4

workers' compensation board, and Mr. Liakas are named as the Legal Service Defendants. The Medical Provider Defendants are various medical and surgical facilities, doctors, internists, radiologists, neurosurgeons, anesthesiologists, chiropractors, and acupuncturists, all operating practices in New York.

**B.    The Alleged Fraudulent Scheme.**

Notwithstanding the length of the Complaint, the gravamen of Plaintiffs' claims is simple. In sum, Plaintiffs allege that Defendants orchestrated a scheme to defraud insurance companies by directing, in an unknown manner by undescribed means, unidentified individuals, whom Plaintiffs designate simply as "Runners," to recruit undocumented construction workers to stage fake constructions accidents. Compl. at ¶ 60. Plaintiffs speculate that these undocumented workers were incentivized to partake in "fraud" by the promise of workers' compensation benefits and additional compensation through unspecified "funding loans" arranged by Liakas Law. *Id.* at ¶¶ 62–63. Plaintiffs further speculate that the funding loans, provided by unidentified funding companies, would also be used to compensate the "Runners." *Id.* at ¶ 78.

Thereafter, Plaintiffs claim that Liakas Law would refer the workers to certain medical providers named as Defendants herein to provide allegedly unnecessary testing and medical treatment, with the overall purpose of extracting greater settlements from general liability carriers such as Roosevelt and Ionian. *Id.* at ¶¶ 63, 68, 90. Plaintiffs allege that in exchange for providing allegedly falsified medical documents and/or performing unnecessary surgeries, the Medical Provider Defendants received compensation through workers' compensation insurance claims. *Id.* at ¶ 69.

The Complaint alleges in conclusory fashion that Defendants constituted an "association-in-fact enterprise." *Id*. at ¶¶ 59, 188, 360. In support of their claim, Plaintiffs rely primarily on a flow chart and generic legal conclusions, based "upon information and belief," that multiple

actors worked together to perpetrate the fraud. *Id.* at ¶¶ 59–90. Plaintiffs claim that Liakas Law, in furtherance of its representation of the Firm's clients, filed or transmitted litigation related pleadings, fee applications, HIPPA authorizations, or medical reports to the workers' compensation board, New York State courts, and other defendants. *Id.* at ¶¶ 330(i)(2-4), (ii)(2-5)(iii), (3-7), (iv)(3-4), (v)(2-7), (vi)(2-6), (vii)(2-6), (viii)(2-8). In other words, Plaintiffs contend that Liakas Law acted as proper advocates for workers whose claims of injury Plaintiffs' insured dispute.

Plaintiffs identify no case wherein one of their insured has prevailed upon a counterclaim or defense of "fraud" against a worker represented by Liakas Law. Indeed, Plaintiffs do not even identify the workers they purport engaged in the underlying fraud in the Complaint, referring to them only as "Claimants." Plaintiffs likewise fail to provide any detail regarding their claimed involvement, as reinsurers, in the defense of the underlying actions and claims. Nonetheless, even though Plaintiffs have been unable to plead factual allegations to support their claims, Plaintiffs assert that Liakas Law "knew or reasonably should have known that the Claimants were faking their injuries and receiving medical services that were unnecessary, excessive, unwarranted and costly and/or not causally related to the alleged workplace accident." *Id.* at ¶ 76.

### C.    Plaintiffs' Alleged Damages.

Plaintiffs do not claim that they have ever contributed to any of the inflated settlements Defendants' scheme is purportedly designed to achieve. Nor do Plaintiffs contend that they have paid any amount of money to any Defendant herein. Rather, Plaintiffs seek compensation for litigation expenses, reimbursement for any payments made to Defendants or to others in connection with an industry-wide rise in fraudulent claims, expenses incurred for the

administration of such claims, and the retention of additional staff to perform investigative and support services.  *Id.* at ¶¶ 356(a)–(d).

### D.    Plaintiffs' Pattern of Duplicative Complaints.

The instant Complaint is part of a continuing series of complaints one or more of Plaintiffs have filed in this District through their attorneys, the Willis Law Group.[1]  Since March 1, 2024, Plaintiffs have commenced at least *six* other civil RICO complaints alleging identical "schemes" by which various law firms, medical providers, and unidentified "Runners" have purportedly coordinated to extract inflated compensation and settlements from insurance companies.[2]  A review of each of these pleadings demonstrates that all are based on pure conjecture, evincing a lack diligence and good faith.  Moreover, each is replete with the same boilerplate language identifying the same "scheme," predicate acts, and generic damages.

A comparison of Plaintiffs' complaints using the plagiarism detection software Turnitin iThenticate illustrates Plaintiffs' copy-and-paste litigation strategy, reflecting an aggregate similarity score of 83% across complaints.  *See* Figure 1.  As but one example, the green highlighting below generated by Turnitin iThenticate software shows that the instant Complaint's "Fraud Scheme" paragraph is identical to the corresponding paragraph in one of their previously filed cases, pending under Case No. 1:24-cv-1549-NG-LB.[3]

---

[1] The Willis Law Group has also filed suit on behalf of Union Mutual Fire Insurance Company, who commenced an action against Liakas Law and others on April 3, 2025, alleging the same fraudulent scheme.  *Union Mutual Fire Ins. Co. v. Liakas Law, P.C. et al.*, No. 25-cv-1857-FB-JRC (E.D.N.Y. Apr. 3, 2025).

[2] *See Roosevelt Road, Re, Ltd. et al. v. Hajjar et al.*, No. 1:24-cv-1549-NG-LB (E.D.N.Y. Mar. 1, 2024); *Roosevelt Road, Re, Ltd. et al. v. Wingate Russotti, Shapiro, Moses & Halperin, LLP et al.*, No. 1:24-cv-6259-NCM-VMS (E.D.N.Y. Sept. 6, 2024); *Ionian Re, LLC, v. Gorayeb & Associates, P.C. et al.*, No. 1:24-cv-07098-RPK-PK (E.D.N.Y. Oct. 8, 2024); *Ionian Re, LLC et al. v. Cedillo, et al.*, No. 1:24-cv-7969-DG-JRC (E.D.N.Y. Nov. 15, 2024); *Roosevelt Road Re, Ltd., v. Subin et al*, No. 1:24-cv-05033-HG (E.D.N.Y. Nov. 26, 2024); *Roosevelt Road, Re, Ltd. et al. v. William Schwitzer & Associates P.C. et al.*, No. 1:25-cv-3386-NKE (E.D.N.Y. Jun. 16, 2024).

[3] Turnitin's iThenticate is a high-level plagiarism detection and document verification tool tailored for use by scholars, publishers, universities, and government bodies.  *Turnitin*, iThenticate, https://www.ithenticate.com (last visited Jun. 23, 2025).



Figure 1.

Similarly, the Complaint's description of Liakas Law's participation in the alleged fraud is virtually identical to Plaintiffs' allegations of fraud against another law firm in the case pending under Case No. 1:24-cv-1549-NG-LB.  Copied text is illustrated in the yellow highlighting in the image below, generated by Plagiarism CheckerX 2025.[4]



Figure 2.

---

[4] Plagiarism CheckerX 2025 is an award-winning software that services numerous institutions in 120+ countries. *Plagiarism Checker*, https://plagiarismcheckerx.com (last visited Jun. 23, 2025).

Most damningly, the generic damages sought by Plaintiffs in the instant action are a mirror image of the other complaints filed.



Figure 3.

**E.    Judge Gonzalez's June 19, 2025, Memorandum & Order Dismissing Plaintiffs' Related Case.**

Days before this filing, Judge Gonzalez dismissed all of Plaintiffs Roosevelt and Tradesman's claims in the matter filed under Case No. 1:24-cv-05033-HG, one of Plaintiffs' six duplicative RICO suits against New York law firms.  The Court held that "Plaintiffs' RICO claims fail because they fail to adequately plead cognizable, direct injuries[.]"  *Subin*, 2025 WL 1713109, at *1.  The court declined to exercise supplemental jurisdiction over Plaintiffs' remaining claims.  *Id.* at *8.  While the court granted leave to amend "in an abundance of caution," it noted that "amendment will probably be futile."  *Id.*

Roosevelt's RICO claims failed because the reinsurer's "alleged RICO injuries are too attenuated to survive dismissal."  *Id.* at *6.  Roosevelt did not establish it was the target of any

fraud.  *Id.*  Rather, Roosevelt claimed only that it "sustained an injury 'derivative of an injury to a third party.'"  *Id.* (internal citation omitted).  Ultimately, as here, Roosevelt alleged "a market-wide injury" insufficiently direct to withstand dismissal.  *Id.* at *7.

Similarly, the court found that Tradesman's RICO claims failed because, as an administrator, Tradesman was not an intended target of the purported scheme, and it was not plausible that the "'preconceived purpose'" of defendants' conduct was "increased administrative and investigative costs."  *Id.* at *5 (internal citation omitted).  The court further held that "Tradesman's lack of cognizable RICO injury is also undermined by the fact that its theory appears to defy economic logic," noting that it was Tradesman's business to investigate insurance claims that might lack merit, and that Tradesman never alleged "the excess costs of investigating fraudulent claims exceeded the money it made from processing them."  *Id.*

## ARGUMENT

## POINT I

## PLAINTIFFS LACK STANDING TO BRING THIS LAWSUIT

### A.    Legal Standard.

Standing is a "threshold matter in determining whether the district court [has] jurisdiction to hear and decide this case."  *Anderson Grp. LLC v. City of Saratoga Springs*, 805 F.3d 34, 44 (2d Cir. 2015) (internal citations and quotations omitted).  At the pleading stage, the plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.  *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (internal citations and quotations omitted).  To survive a Rule 12(b)(1) motion, "the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists."  *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).  If the plaintiff lacks standing, the district court is without subject matter jurisdiction to hear the case,

and dismissal is mandated.  *See Hibbert v. Cap. One Auto Fin*., No. 1:23-cv-07538(OEM)(TAM), 2024 WL 3498536, at *2–3 (E.D.N.Y. July 22, 2024).

    **B.**    **Plaintiffs Lack RICO Standing.**

Plaintiffs fail to allege facts sufficient to satisfy civil RICO's "more rigorous" standing requirements.  *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) (internal citations and quotations omitted).  To establish civil RICO standing, Plaintiffs must demonstrate "(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation."  *Hecht v. Com. Clearing House, Inc.*, 897 F2d 21, 23 (2d Cir. 1990).  Further, Plaintiffs must allege an "injury-causing overt act[] as the basis of civil standing to recover for RICO conspiracy violations."  *Id.* at 25.  Merely asserting "a conspiracy—an agreement to commit predicate acts—cannot by itself cause any injury."  *Id.*

    **a.**    **Plaintiffs do not allege that Defendants' conduct proximately caused their injuries.**

The federal RICO statute "has been held to limit standing to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate cause of their injury, as well as a logical, or 'but for,' cause."  *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F3d 374, 380 (2d Cir. 2001); *see also Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931, 945 (2025); *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010).  "[P]roximate cause requires some direct relation between the injury asserted and the injurious conduct alleged."  *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 259 (1992).  Thus, Plaintiffs must be the "direct target" of the alleged racketeering activity.  *Com. Cleaning Servs., L.L.C.*, 271 F.3d at 384.  "[A] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover."  *Holmes*, 503 U.S. at 268–69; *see also Horn*, 145 S. Ct. at 945 (holding "whenever the plaintiff's theory of

11

causation requires moving well beyond the first step, it cannot meet RICO's direct relationship requirement") (internal quotation marks and citation omitted).

Roosevelt and Ionian are reinsurers who allege that they have incurred "expenses paid as reimbursement to primary insurers providing coverage for the claims and lawsuits filed and/or prosecuted by the Legal Defendants on behalf of Claimants."  Compl. at ¶¶ 336–37, 341–42. They also claim that "[b]ut for Defendants' perpetration of the Fraud Scheme," Roosevelt and Ionian's "expenses paid as reimbursement to primary insurers would be less[.]"  *Id.* at ¶¶ 337, 342.  These allegations rest entirely on an attenuated and speculative chain of indirect causation. *Holmes*, 503 U.S. at 259; *see also Hemi Grp.*, *LLC*, 559 U.S. at 9 ("A link that is too remote, purely contingent, or indirect is insufficient." (internal citations and quotations omitted) (cleaned up)).

Roosevelt and Ionian's injuries arise solely if (1) a construction worker makes a fraudulent claim of injury, (2) the construction employer decides to seek coverage, (3) the primary insurer makes a decision to investigate and/or litigates the claim, (4) the primary insurer makes a decision to pay out on a claim, and (5) the payment triggers an obligation to contribute under the unknown terms of the reinsurance contract.  The foregoing chain must be repeated infinite times to create the sweeping consequences Plaintiffs claim for the entire insurance industry.  Such speculative theories, which rest on "the independent actions of third and even fourth parties," are plainly insufficient to establish proximate cause.  *Hemi Grp., LLC*, 559 U.S. at 15.  That is doubly so where the operative pleading does not even contain an allegation that Plaintiffs contributed a single dollar towards an actual claim or settlement.

As Judge Gonzalez recently explained, Roosevelt and Ionian "look[] a lot like [the Securities Investor Protection Corporation [hereinafter referred to as the "SIPC"] in *Holmes*," a

RICO case alleging that the defendant participated in a stock manipulation scheme that resulted in two broker-dealers going under, requiring SIPC's intervention to cover the claims of the brokerages' customers:

> Just as the directly injured parties in that case were the brokerages, the directly injured parties here are the construction employers faced with fraudulent lawsuits. When those brokerages went bust, their customers were harmed; here, too, because the construction employers were sued, the primary insurers faced losses. Ultimately, SIPC, which had statutory obligations to brokerage customers analogous to Roosevelt's contractual obligations to primary insurers, could not bring a RICO claim against the defendant because 'the link [was] too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers.' That rationale compels the same conclusion here, and perhaps more so, as the harm to Roosevelt is doubly contingent on the losses to the construction employers and their insurers.

*Subin*, 2025 WL 1713109, at *6 (citing *Holmes*, 503 U.S. at 261–62, 271). In other words, any harm suffered by Roosevelt and Ionian is an injury derivative of an injury to a third party. It is clear under well-settled Supreme Court precedent that such injury is insufficient to state a RICO claim.

It is equally untenable to suggest that the managing agent of a reinsurer can establish proximate cause for payments made in connection with "manag[ing] [] the policies that cover the various claims and lawsuits filed and prosecuted by" Liakas Law. Compl. at ¶ 352. As discussed above, Tradesman manages claims and lawsuits pursuant to a contract between Tradesman and Roosevelt. Tradesman has no direct relationship with any primary insurer, party to any underlying lawsuit, or Defendants herein. Thus, Tradesman is, at most, a "secondary victim[]" who cannot show proximate cause under RICO because its injuries are "purely contingent" on harms to the primary insurer, through an insurance agreement, and to Roosevelt, through a reinsurance agreement. *See Holmes*, 503 U.S. at 259, 274.

Likewise, Tradesman's bare allegation that large-scale insurance fraud has hurt its business and caused its costs to rise does not suffice to show proximate cause. As Tradesman

alleges, its injuries are caused by the decisions of "numerous insurance carriers" to "cease[] . . . writ[ing] Workers' Compensation and/or general liability policies."  Compl. at ¶ 355.  The downstream effects of an insurance industry trend on a managing agent are not proximately caused by eight allegedly fraudulent claims by construction workers.  Tradesman's lost business opportunities are "too speculative to confer standing[.]"  *See Hecht*, 897 F.2d at 24 (no standing where "loss of commissions may have been factually caused by RICO violations, but [were] not proximately caused by the violations").

Indeed, as Judge Gonzalez aptly noted, Tradesman's theory of injury "appears to defy economic logic."  *Subin*, 2025 WL 1713109, at *5.  While Tradesman "complains that it was required to spend money administering and investigating bogus claims," it is "in the business of sorting the wheat from the chaff in that way, and its insurer and reinsurer customers presumably pay it for that work."  *Id.*  Judge Gonzalez likens Tradesman to a local mechanic tasked with repairing windows in a neighborhood where a group of kids decide to start throwing rocks at cars, breaking their windows: "Perhaps the local mechanic would be irked by the projectiles flying around the neighborhood, but one would find it odd if he faulted the kids for the cost of the glass he needed to buy all while delivering substantial invoices to his new customers."  *Id.*

Accordingly, Plaintiffs fail to demonstrate RICO standing, and their RICO claims must be dismissed.

## C.    Plaintiffs Lack Article III Standing.

Further, Plaintiffs' claims fail because Plaintiffs do not meet basic Article III standing requirements.  Article III standing consists of "three irreducible elements: causation, redressability, and injury-in-fact."  *Plante v. Dake*, 621 Fed. App'x 67, 69 (2d Cir. 2015) (internal citations and quotations omitted) (cleaned up).  To demonstrate Article III standing, a plaintiff must have "(1) suffered an injury[-]in[-]fact, (2) that is fairly traceable to the challenged conduct

of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). At the pleading stage, the plaintiff bears the burden of alleging "facts demonstrating each element" of standing for each claim alleged. *Id.* (internal citations and quotations omitted).

### a.   Plaintiffs fail to plead a redressable injury-in-fact.

To plead an injury-in-fact, Plaintiffs must demonstrate "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (internal citations and quotations omitted) (cleaned up). A particularized injury "must affect the plaintiff in a personal and individual way," and a "concrete injury must be '*de facto*'; that is, it must actually exist." *Id.* at 339–40 (emphasis in original).

Here, Plaintiffs fail to point to any "invasion of a legally protected interest that is concrete and particularized." *Id*. at 339. As a threshold matter, Plaintiffs are neither the allegedly defrauded construction employers nor the primary insurance companies obligated to process and defend the claims Plaintiffs label as fraudulent. Plaintiffs Roosevelt and Ionian are secondary insurers, or reinsurers, and Tradesman is a managing agent.

Reinsurance allows an insurance company to transfer a portion of its risk to reinsurers such as Plaintiff. *See Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 17 (2d Cir. 1996). New York State's reinsurance regulations require that a primary insurer may not cede *all* of its risk to the reinsurer; zero retention is "unacceptable." N.Y. State Dep't of Fin. Servs., Requirements for Reinsurance Agreements, Letters of Credit and Pooling Arrangements, New York State Department of Financial Services, available at https://www.dfs.ny.gov/ apps_and_licensing/property_insurers/licensing_domestic_foreign/reinsurance_agreements (last visited Jun. 23, 2025); *see also* N.Y. Ins. Law § 1308(e)(1)(A) (McKinney). Rather, reinsurance

15

permits the primary insurer to manage risk by, for example, reducing the likelihood of very large payouts when unusual, catastrophic losses occur. In other words, most reinsurers rarely make payments absent exceptional losses.

The doctrine of equitable subrogation allows an insurer to stand in the shoes of its insured "upon its payment of an insured's loss." *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 260 (2d Cir. 1999) (internal citations omitted). "At that time, the insurer becomes subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss." *Id.*

Here, Plaintiffs do not submit the underlying reinsurance agreements or identify the terms of their coverage or the names of their reinsured. Plaintiffs cannot mount a collateral challenge to an unidentified primary insurer's coverage and allocation determinations by subrogated RICO suit. Moreover, Plaintiffs do not claim that they have ever actually paid a single dollar to settle any claim to any party in this action. Roosevelt and Ionian, as reinsurers, are unlikely to bear any obligation to contribute to claims. Tradesman, as a mere managing agent, does not bear an obligation to pay *any* claim. Although such information is undoubtedly within their possession, Plaintiffs present no concrete and particularized payment as a basis for their claims.

Instead, Plaintiffs rely on alleged trends in general liability claim adjustment expenses. *Id.* at ¶ 338. Plaintiffs fail to particularize how these trends are attributable to Defendants' conduct as alleged in this action or how they affect Plaintiffs in a personal and individual way. Plaintiffs' reliance on the conclusory allegation that they were forced to "hire and retain additional personnel" to address the alleged industry-wide increase in fraudulent claims by construction workers, (Compl. at ¶ 351), and "incurred [additional] expenses" in processing those claims, is insufficient. *Id.* at ¶¶ 336, 341. Plaintiffs cannot manufacture their own standing

simply because they engaged in claims investigation and litigation in accordance with their obligations under a reinsurance contract. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 370 (2024) (a plaintiff "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action").

Finally, Plaintiffs cannot satisfy the redressability requirement without a concrete injury. Redressability turns on whether "the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976). Alleged industry-wide patterns of increasingly serious claims by construction workers— the source of Plaintiffs' claimed injury—cannot be redressed by this Court in a case involving a handful of supposedly exemplary "claimants," a single law firm, and a discrete group of medical providers. Nor is Plaintiffs' crusade of lawsuits against other law firms and medical providers, designed to chill workers' compensation and Labor Law claims across the board, a proper means of addressing reinsurers' increased claims processing costs.

          **b.**      **Plaintiffs fail to trace their alleged injuries to the challenged conduct.**

Plaintiffs also fail to trace a "causal connection between the injury and the conduct complained of[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

As discussed above, Roosevelt and Ionian claim that they have incurred expenses from paying primary insurers and have incurred general liability claim adjustment expenses because of the purported RICO scheme, but they cannot point to a single invoice that was paid as a direct result. Compl. at ¶¶ 336, 341. Rather, Plaintiffs rely on the vague *ipse dixit* that, absent a purported industry-wide pattern of fraud, "expenses paid as reimbursement to primary insurers would be less because the Claimants' injuries, if any, would be less severe and the medical services necessary to treat any accident-related injury, if any, would be less significant." *Id.* at ¶¶ 336–37, 341–42. Simply alleging that "expenses paid as reimbursement to primary insurers

would be less" but for Defendants' alleged conduct is insufficient to demonstrate a "fairly traceable connection." *Id.*; *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 103 (1998).

Similarly, Tradesman fails to demonstrate a "traceable" injury. *Id.* Tradesman claims it was "obligated" to hire and retain additional personnel to address "fraudulent" claims "beyond the normal scope of business" because its third-party claims adjuster "could not properly manage the significant number of fraudulent claims." Compl. at ¶ 351. Further, Tradesman alleges it made substantial payments in connection with its management of the policies and is at risk of closure because its "ability to earn commissions is also directly attributable to the amount of the reserves maintained by reinsurers to pay claims and expenses." *Id.* at ¶ 353. Tradesman's alleged injuries only demonstrate it is one step further removed than Roosevelt and Ionian. Indeed, all of Tradesmen's alleged injuries are the result of its contractual obligations to Roosevelt. *Id.* at ¶ 356(c).

## POINT II

## PLAINTIFFS FAIL TO STATE A FEDERAL RICO CLAIM

### A.    Legal Standard.

It is well settled that in considering a motion to dismiss pursuant to FRCP 12(b)(6), the court must presume the facts pleaded to be true, and the pleading "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal.*, 556 U.S. 662, 678 (2009). The Court "need not consider conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal citations and quotations omitted). It is not enough that a pleading raises the mere possibility of unlawful or actionable conduct. *See Iqbal*, 556 U.S. at 678. Nor is it sufficient to recite the elements of a cause of action; "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 179 (E.D.N.Y. 2014) (citing *Twombly*, 550 U.S. at 555).

## B.    Plaintiffs Fail to State a RICO Claim Pursuant to 18 U.S.C. § 1962(c).

"To establish a civil RICO claim, a plaintiff must allege: (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal citations and quotations omitted) (cleaned up).  The alleged RICO pattern must be pleaded with specificity. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999).  Further, where the alleged predicate acts pertain to violations of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, they are subject to the heightened pleading standard of FRCP 9(b) and, therefore, must be pleaded with particularity, even as RICO predicates. *Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335, at *2 (2d Cir. Oct. 31, 2022).

"Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017) (internal citations and quotations omitted) (cleaned up).  Plaintiffs' claims against Liakas Law, consisting of nothing more than the same boilerplate recitation of the statutory elements they have submitted in numerous other cases pending in this District, are frivolous and subject to dismissal.

### a.    The Complaint fails to allege an association-in-fact enterprise.

An association-in-fact enterprise is "an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  "The [enterprise] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a

continuing unit." *Id.* In other words, an enterprise needs three elements: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

To satisfy the first element, "the individuals that [compose] the enterprise 'must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.'" *Abbott Lab'ys. v. Adelphia Supply USA*, No. 15-cv-5826(CBA)(LB), 2017 WL 57802, at *12 (E.D.N.Y. Jan. 4, 2017) (internal citations omitted). The second element is established if Plaintiffs demonstrate actual relationships between the various members and their roles in the purported RICO scheme. *Id.*

Proof that "'several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates'" does not suffice to show that the individuals were members of an enterprise. *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018) (quoting *Boyle*, 556 U.S. at 947 n.4). In evaluating whether a complaint pleads the required association, courts examine factors including:

> (i) whether members of the alleged enterprise have interpersonal relationships; (ii) where the members are located, and whether the complaint explains how they came to an agreement to act together or how they knew one another; (iii) whether the members are symbiotic—in other words, whether they depend on one another, act to benefit one another, or rely on one other's activities; and (iv) whether the alleged predicate acts could be accomplished without the assistance of the other members of the alleged enterprise.

*Dynarex Corp. v. Farrah*, No. 18-cv-7072(VB), 2019 WL 2269838, at *3 (S.D.N.Y. May 28, 2019) (internal citations omitted).

Plaintiffs broadly assert that, under the direction of Liakas Law, undisclosed "Runners" recruited unnamed construction workers, who were incentivized to participate in the scheme with promises they would receive workers' compensation benefits and additional benefits in the form of litigation funding loans arranged by Liakas Law through unspecified funding companies.

Compl. at ¶ 60.  Plaintiffs further recite that Liakas Law "had an agreement or understanding as to the fraud scheme, including the Medical Provider Defendants, who provide a variety of services" in furtherance of the scheme.  *Id.* at ¶ 67.  This is nothing more than a series of *ipse dixits*.  Plaintiffs allege no facts whatsoever in support of these claims.  For example, Plaintiffs do not explain the structure of the alleged agreement among defendants, when or how Defendants became known to one another, how referrals were made, or how Defendants' alleged fraudulent activities were distinguished from ordinary business.  *See Malek v. AXA Equitable Life Ins. Co*., No. 20-cv-4885(DG)(AYS), 2023 WL 2682408, at *15 (E.D.N.Y. Mar. 29, 2023) (dismissing for failure to plead how the defendants "communicated with one another, coordinated with one another, or maintained interpersonal relationships").

Instead, Plaintiffs declare that "Defendants together constituted an association-in-fact enterprise generally structured as depicted in Figure[s] 1 [and 2 of the Complaint]," referencing the same generic flow charts Plaintiffs have included in their other complaints.  Compl. at ¶ 59. Plaintiffs cannot allege an enterprise by "conclusory naming of a string of entities" or, as here, by simply inserting Defendants' names into a flow chart and concluding that it constitutes an enterprise.  *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2d Cir. 2004) (internal citations and quotations omitted); *see also* Compl. at ¶ 59.  It is wholly insufficient to "cluster[] dozens of defendants by the nature of their businesses" in the absence of any "facts concerning the 'hierarchy' or 'organization'" of the alleged associations.  *Abbott Lab'ys*, 2017 WL 57802, at *12 (E.D.N.Y. 2017); *see also United States v. Turkette*, 452 U.S. 576, 583 (1981) (to adequately plead a RICO claim, the enterprise must be "separate and apart from the pattern of activity in which it engages"); *Moss v. BMO Harris Bank, N.A*, 258 F.Supp.3d 289, 304

(E.D.N.Y. 2017) (simply "describing the roles [within an alleged enterprise]" is not sufficient). Thus, the Complaint fails to plausibly allege an association-in-fact.

Plaintiffs' conclusory assertion that Defendants, including over forty medical professionals, communicated through "different methods such as telephone calls, texts, emails and mail" fails to cure this defect.  Compl. at ¶¶ 198, 206, 222.  *See, e.g.*, *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-cv-1861, 2021 WL 960394, at *9 (E.D.N.Y. Mar. 15, 2021) (finding no enterprise absent allegations that the defendants "were even aware of each other's existence, let alone that they agreed to participate with each other").  Nor can Plaintiffs seek refuge by drawing an analogy to the proposed schemes in *United States v. Rainford*, 110 F.4th 455, 468 (2d Cir. 2024), and *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 98 (2d Cir. 2024), neither of which concerned a motion to dismiss RICO allegations at the pleading stage.  Unlike in those cases, Plaintiffs fail to plead any specific facts showing how Defendants orchestrated their fraudulent scheme as a practical matter or that the relationship among Defendants is symbiotic.  Rather, Plaintiffs broadly claim that Liakas Law "directed the aggressive and unnecessary medical treatment" of claimants and that "many of the medical services provided . . . were unnecessary, excessive, and/or unwarranted."  Compl. at ¶¶ 96, 100. In other words, Plaintiffs do nothing more than contend that Liakas Law referred clients to doctors who evaluated injured workers and subsequently performed medical procedures they deemed to be necessary.

### b.    Plaintiffs fail to plausibly allege predicate acts or a pattern of racketeering activity.

18 U.S.C. § 1961(1) enumerates the types of predicate acts that constitute "racketeering activity."  To prove a pattern, Plaintiffs must allege at least two predicate racketeering acts that "amount to or pose a threat of continued criminal activity" and are "related."  *United States v.*

*Laurent*, 33 F.4th 63, 75 (2d Cir. 2022) (internal citations and quotations omitted); *see* 18 U.S.C. § 1961(5).  Where a plaintiff alleges predicate acts that sound in fraud, those allegations must be pleaded with particularity under FRCP 9(b) and must contain facts "that give rise to a *strong* inference of fraudulent intent."  *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009) (internal citations and quotations omitted) (emphasis in original).  Plaintiffs, claiming predicate acts of bribery in violation of New York Penal Law § 215 and mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, fail to meet their pleading burden.

> ### i.    Plaintiffs do not plead the predicate acts of mail and wire fraud with particularity.

"The elements of mail or wire fraud are (1) a scheme to defraud (2) to get money or property (3) furthered by the use of interstate mail or wires."  *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (internal citations and quotations omitted).  To satisfy the pleading requirements of FRCP 9(b), a Complaint premised on mail or wire fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speakers, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Plaintiffs' Complaint falls far short of this standard.  Rather, Plaintiffs attempt to satisfy their burden by repeating for each "Claimant" merely the statutory requirements for wire and mail fraud and asserting that Defendants collectively transmitted "medical documents, claim documents submitted to the NY WCB, and . . . case documents filed/provided in the [underlying] personal injury action[s]."  Compl. at ¶¶ 330(i)(1)(ii)(1)(iii)(1), (iv)(1), (v)(1), (vi)(1), (vii)(1), (viii)(1).  Initially, Plaintiffs' group pleading utterly fails to allege that each Defendant "personally committed or aided and abetted the commission of [the] predicate acts."  *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992).  Moreover, the acts Plaintiffs claim

Defendants engaged in do not state a particularized claim for mail or wire fraud. In essence, Plaintiffs recite only that (1) the Medical Provider Defendants transmitted medical reports electronically and (2) Liakas Law filed pleadings, fee applications, HIPPA authorizations, or medical reports in furtherance of their representation of the subject construction workers with the New York State Workers' Compensation Board (hereafter referred to as "NYSWCB") and New York State courts. Compl. at ¶¶ 330(i)(2-4), (ii)(2-5), (iii)(3-7), (iv)(3-4), (v)(2-7), (vi)(2-6), (vii)(2-6), (viii)(2-8).

Plaintiffs do not specifically identify any parts of Liakas Law's filings that were fraudulent. Nor do Plaintiffs provide any details as to why documentation of injury and medical treatments by doctors in legal documents is fraudulent. To the contrary, it is well-settled that the use of mail and wire communications in filing legal documents, even those alleged to be fraudulent, without more, cannot constitute a RICO predicate act. *See Nakahara v. Bal*, No. 97-cv-2027(DLC), 1998 WL 35123, at *17–21 (S.D.N.Y. Jan. 30, 1998). Indeed, the Second Circuit has held that allegations of fraudulent litigation activities cannot alone form the basis of a RICO predicate. *See, e.g.*, *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).

Plaintiffs' claims that Liakas Law submitted legal arguments and documentation of injury and medical treatment that alleged tortfeasors and their insurers dispute describes nothing more than standard procedure in a run-of-the-mill tort case. A difference of opinion among medical professionals regarding the injury and necessary treatment protocol of a tort plaintiff is unremarkable; a "battle of the experts" is the norm, rather than the exception. *Id.* at ¶ 93.

### ii.    Plaintiffs fail to allege witness bribery.

The Complaint also fails to allege that Liakas Law bribed any witnesses. To establish bribery under New York Penal Code Section 215, "a witness or a person about to be called as a witness in any action or proceeding" is required. N.Y. Penal Law § 215.00 (McKinney).

Moreover, Plaintiffs must establish that Liakas Law offered or agreed to confer a benefit upon such witness with the understanding that "the testimony of such witness will thereby be influenced." *Id.* Here, Plaintiffs can identify no witness or person "about to be called" as a witness in any proceeding. *Id.* Further, Liakas Law's proper and zealous advocacy for their clients, including any assistance in obtaining litigation financing, is not and cannot be a "bribe" within the meaning of the Penal Code.

### C.    Plaintiffs Fail to State a RICO Conspiracy Claim Pursuant to § 1962(d).

Because the Complaint fails to sufficiently plead a substantive RICO claim, Plaintiffs' RICO conspiracy claim must also be dismissed. *See Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*, 280 F. Supp. 3d 349, 356 (E.D.N.Y. 2017) ("Proper pleading of a substantive RICO violation is required to sustain a RICO conspiracy claim."). Additionally, Plaintiffs fail to plead a key requirement for a RICO conspiracy claim: the formation of an agreement. *Laurent*, 33 F.4th at 76.

Plaintiffs merely assert that "Defendants had an agreement or understanding as to the fraud scheme." *Id.* at ¶ 67. This is wholly insufficient to demonstrate that Defendants came to an understanding to achieve the specific unlawful objective. *See United States v. Applins*, 637 F.3d 59, 72–75 (2d Cir. 2011). Plaintiffs also fail to plausibly allege that Liakas Law "knowingly and willfully join[ed] the conspiracy." *United States v. Kukushkin*, 61 F.4th 327, 329 (2d Cir. 2023).

25

## POINT III

## PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED.

### A.    The Court Should Decline Supplemental Jurisdiction over Plaintiffs' State
####      Law Claims.

District courts may exercise supplemental jurisdiction over claims "so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy."

28 U.S.C.A. § 1367(a); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 212 (2d Cir.

2004).  District courts may decline to exercise supplemental jurisdiction if "(1) the claim raises a

novel or complex issue of State law, (2) the claim substantially predominates over the claim or

claims over which the district court has original jurisdiction, (3) the district court has dismissed

all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are

other compelling reasons for declining jurisdiction."  28 U.S.C.A. § 1367(c)(1)–(4).

Here, Plaintiffs' failure to plead a viable federal RICO claim over which the Court has

original jurisdiction, *see supra* Point II, is a compelling reason to decline jurisdiction.  District

courts are discouraged from exercising supplemental jurisdiction over state law claims after the

resolution of a federal claim.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)

("Needless decisions of state law should be avoided both as a matter of comity and to promote

justice between the parties.").  When the litigation remains in an early stage, courts generally

decline to exercise supplemental jurisdiction.  *See Sky Med. Supply Inc. v. SCS Support Claims

Servs., Inc.*, 17 F. Supp. 3d 207, 236 (E.D.N.Y. 2014) (collecting cases); *Kolari v. New York-

Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise

supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.")

(internal citations and quotations omitted) (cleaned up).  The instant litigation is at its infancy,

and without Plaintiffs' federal RICO claim, pure questions of state law remain.

Moreover, any remaining state law claims should proceed in New York State Supreme Court because the proper forum for claims of fraud with respect to ongoing litigation is before the court in which the underlying action for each of the Claimants is pending. Plaintiffs' claims will be afforded a "surer-footed reading of applicable law" in the proper forum. *Gibbs*, 383 U.S. at 726.

**B.     Plaintiffs Fail to Plead Any of the Requisite Elements of Common Law Fraud with Particularity.**

Plaintiffs' state law claims are also subject to dismissal for failure to state a claim. A plaintiff asserting a claim sounding in common law fraud under New York law must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff." *Gov't Emps. Ins. Co. v. Simakovsky*, No. 14-cv-3775(KAM)(SMG), 2015 WL 5821407, at *7 (E.D.N.Y. Oct. 15, 2015) (internal citations and quotations omitted); *Singh v. T–Mobile*, 232 A.D.3d 662, 666 (2d Dep't 2024). Common law fraud claims are also subject to the heightened pleading requirements of FRCP 9(b). Accordingly, a plaintiff must allege the "who, what, when, where, and why" for each alleged statement. *Williams v. Affinion Grp.*, LLC, 889 F.3d 116, 124–25 (2d Cir. 2018).

As set forth *supra*, Point II, Plaintiffs fail to plead fraud with specificity. Indeed, Plaintiffs do not allege Liakas Law made any specific fraudulent representations to them. Plaintiffs' repetition of the words "fraudulent" or "fraud" over 500 times in their Complaint is no substitute for particularized allegations. *See generally* Compl. Further, Plaintiffs fail to plausibly allege that Liakas Law *knew* that any of the accidents, pleadings, and medical reports were fraudulent. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996) (plaintiff "must prove a misrepresentation or a material omission of fact which was false and

known to be false by defendant"); *see also Comora v. Franklin*, 171 A.D.3d 851, 853 (2d Dep't 2019).

Lastly, Plaintiffs do not plausibly allege that they reasonably relied upon any fraudulent misrepresentations when they investigated claims or reimbursed primary insurers for litigation expenses pursuant to reinsurance agreements expressly obligating them to do exactly that. *See Singh v. NYCTL 2009-A Tr.*, No. 14-cv-2558, 2016 WL 3962009 (S.D.N.Y Jul. 10, 2016). Plaintiffs' allegation that Tradesman reasonably relied on the invoices and documentation submitted in support of the alleged scheme as "facially valid," (Compl. at ¶¶ 333–34), is belied by Plaintiffs' own admission, citing New York Workers' Compensation Law § 13-5(1), that Tradesman's "Third-Party Administrator Gallagher Bassett is under a statutory obligation to promptly and fairly pay or object to claims within 45 days." *Id.* at ¶ 331 (citing N.Y. Workers' Comp. Law § 13-5(1)) (McKinney). In other words, it is categorically false to suggest that Plaintiffs simply accept claims at face value.

### C.    Plaintiffs' Unjust Enrichment Claim is Duplicative.

An unjust enrichment claim requires proof that: "(1) defendant was enriched; (2) at plaintiff's expense; and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Malek v. AXA Equitable Life Ins. Co. v. Wisdom Equities LLC*, No. 20-cv-4885, 2023 WL 2682408 (E.D.N.Y. Mar. 29, 2023) (internal citations omitted). However, an "unjust enrichment claim is only available in unusual situations" and "is not available where it "simply duplicates, or replaces, a conventional contract or tort claim." *Id.* (internal citations and quotations omitted). Here, Plaintiffs' claim for unjust enrichment is duplicative of its common law fraud claim. *Intercity Logistics LLC v. Cargo World USA, Inc.*, No. 24-CV-02138(OEM)(RML), 2025 WL 1043623, at *6 (E.D.N.Y. Apr. 8, 2025) (dismissing unjust enrichment claim because based on same facts as other causes of action).

### D.     Plaintiffs' Claim for Declaratory Relief is Duplicative.

Plaintiffs seek a declaratory judgment pursuant to 18 U.S.C. § 2201(a) stating that Defendants "(i) submitted claims and bills to Plaintiffs for staged accidents and unnecessary healthcare services in violation of New York law"; (ii) "Defendants' activities are unlawful"; and (iii) "Plaintiffs have no obligation to pay any pending, previously-denied, and/or future workers' compensation or general liability insurance claims submitted by the Defendants." *Id.* at ¶ 391(a)-(d). This Court should decline jurisdiction over Plaintiffs' declaratory judgement claim because it is "redundant of a primary claim raised by a party to a lawsuit." *Gorfinkel v. Ralf Vayntrub, Invar Consulting, Inc*., No. 11-cv-5802(PKC), 2014 WL 4175914, at *6 (E.D.N.Y. Aug. 20, 2014). Specifically, Plaintiffs' declaratory judgment claim is predicated on the very same allegations as Plaintiffs invoke in support of their federal RICO and common law fraud claims.

### POINT IV

### PLAINTIFFS' CLAIMS ARE BARRED BY SETTLEMENT

### A.     Plaintiffs May Not Circumvent Settlement Agreements Resolving the Underlying Claims.

The Complaint must also be dismissed because at least two of the Claimants' workers' compensation claims have been settled. The standard waiver agreement for workers' compensation claims (hereinafter referred to as a "§ 32 Waiver") provides that a settlement agreement, if approved by the NYSWCB, is "conclusive, final and binding on all the parties involved." *See* N.Y. Workers' Comp. Bd., Form C-32 Waiver Agreement – Section 32,available at https://www.wcb.ny.gov/content/main/forms/c32. pdf, (last visited Jun. 23, 2025); *see also Lutz v. Lakeside Beikirk Nursing Home*, 301 A.D.2d 688, 690 (3d Dep't 2003) (holding a § 32 agreement, if approved by the NYSWCB, is not subject to review) (internal citations omitted); *see also* N.Y. Workers' Comp. Law §§ 23, 32(c) (McKinney).

As of the date of the instant motion, Claimants C and E settled their workers'
compensation claims pursuant to a binding section 32 settlement agreement.  *See* Declaration of
Dean N. Liakas (hereinafter referred to as the "Liakas Decl."), at ¶¶ 9, 12; N.Y. Workers' Comp.
Law § 32.  Similarly, Claimant B has a pending section 32 settlement agreement.  *Id.* at ¶ 7.
Because Plaintiffs do not allege any facts that were unknown at the time of settlement, they are
barred from challenging those settlements.  *See United States v. Bank of New York*, 14 F.3d 756,
759–60 (2d Cir. 1994).  To the extent that Roosevelt or Ionian acted as a reinsurer for these
claims, any recourse is with the primary insurance company.  *See Unigard Sec. Ins. Co. v. N.
River Ins. Co.,* 79 N.Y.2d 576, 583 (1992) ("Settlements, as well as the investigation and defense
of claims are the sole responsibility of the primary insurer.").

Additionally, Liakas Law was substituted out as workers' compensation counsel for the
workers identified in the Complaint as Claimants C, D, G, and H on February 9, 2023, January
15, 2023, September 8, 2021, and June 9, 2022, respectively.  *See* Liakas Decl. ¶¶ 8, 10, 13–14,
15.  Therefore, any conduct which occurred after such dates cannot form the basis of a claim in
this action.

## CONCLUSION

For the foregoing reasons, Liakas Law respectfully request that this Court grant their motion to dismiss, together with such other and further relief that this Court may deem just and proper.

Dated: June 23, 2025                    Respectfully submitted,
New York, New York

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:_____
James M. Catterson
Christopher C. Caffarone
Brianna S. Walsh
Stephanie LaGumina
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax:    212.858.1500
james.catterson@pillsburylaw.com
christopher.caffarone@pillsburylaw.com
brianna.walsh@pillsburylaw.com
stephanie.lagumina@pillsburylaw.com
*Attorneys for Defendants*
*Liakas Law, P.C., and Dean N. Liakas*

31

**<u>WORD COUNT CERTIFICATION</u>**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I, James M. Catterson, certify that the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss complies with the word limit, as it contains 8,714 words based on Microsoft Word's word processing software.

James M. Catterson