

October 14, 2025

**Via ECF**
Hon. Eric N. Vitaliano
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    ***Roosevelt Road Re, Ltd., Tradesman Program Managers, LLC, and Ionian Re, LLC v. Liakas Law, P.C. et al.; Case No. 1:25-cv-00300-ENV-RML***

Dear Judge Vitaliano:

      This firm represents Plaintiffs Roosevelt Road Re, Ltd., Tradesman Program Managers, LLC, and Ionian Re, LLC (collectively, "Plaintiffs") in the above-referenced matter. Pursuant to Your Honor's Order dated October 7, 2025, Plaintiffs hereby file Plaintiffs' Sur-Reply in Opposition to Reply Memorandum of Law in Further Support of Orthopaedics Spine & Sports Medicine, LLC (d/b/a Total Orthopaedics & Sports Medicine) and Vadim Lerman, D.O.'s Motion to Dismiss.

                                                   Respectfully Submitted,

                                                 */s/ William J. Clay*
                                                 William J. Clay

cc:      All Counsel of Record (via ECF)

**PENNSYLVANIA I NEW YORK I NEW JERSEY I DELAWARE I WEST VIRGINIA I FLORIDA I TEXAS**

The Willis Law Group, PLLC  |  1985 Forest Lane, Garland, Texas 75042
(214) 736.9433 – Main  |  (214) 736.9994 - Facsimile
TheWillisLawGroup.com  |  E-Service Address: service@thewillislawgroup.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ROOSEVELT ROAD RE, LTD. *et al.*,

                              **Plaintiffs,**        Case No.
                                                                               1:25-cv-00300-ENV-RML

v.

LIAKAS LAW, P.C, *et al.*,

                              **Defendants.**

**PLAINTIFFS' SUR- REPLY IN OPPOSITION TO REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ORTHOPAEDICS SPINE & SPORTS MEDICINE, LLC
(D/B/A TOTAL ORTHOPAEDICS & SPORTS MEDICINE) AND VADIM LERMAN,
D.O.'S MOTION TO DISMISS**

      **COME NOW,** Plaintiffs Roosevelt Road Re, Ltd. ("Roosevelt Road"), Tradesman Program Managers, LLC ("Tradesman"), and Ionian Re, LLC ("Ionian") (collectively, "Plaintiffs"),[1] who file this, their Joint Sur-Reply in Opposition to Reply Memorandum of Law in Further Support of Orthopaedics Spine & Sports Medicine, LLC (d/b/a Total Orthopaedics & Sports Medicine) and Vadim Lerman, D.O.'s (collectively, "Total Ortho") Motion to Dismiss Plaintiffs' Complaint (the "Total Ortho Memo").

---

[1] Although Ionian jointly files, it is not subject to Total Ortho's collateral estoppel argument.

## I.    BACKGROUND

In their Reply, Total Ortho cite and rely on *Roosevelt Road Re, Ltd., et al. v. Herbert S. Subin, et al.*, No. 1:24-CV-05033 (HG) ("*Subin*"), to argue collateral estoppel precludes litigation of Tradesman's and Roosevelt's RICO claims [Reply at 7-8]. But, for the reasons articulated in this Sur-Reply, the *Subin* lawsuit does not provide a basis for collateral estoppel to apply here.

## II.    DISCUSSION

Under federal law, collateral estoppel applies only when: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *Interoceanica Corp. v. Sound Pilots*, 107 F.3d 86, 91 (2d Cir. 1997). The party seeking to apply collateral estoppel has the burden of showing the first element, and the party opposing its application has the burden of showing the third element. *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (internal quotations omitted).

**1.    Total Ortho has not met its burden of establishing elements one and two.**

In its Reply, Total Ortho baldly alleges that *Subin* involved "materially indistinguishable allegations" to those asserted in this lawsuit, namely "whether Roosevelt and Tradesman plausibly alleged a direct RICO injury sufficient to confer standing." [Reply at 7-8]. Total Ortho argues preclusive effect should be given to Judge Gonzalez's determination that Tradesman's alleged injuries were "derivative" and that Roosevelt's were "too attenuated to survive dismissal" under Rule 12(b)(6) [*Id.*]. This is the extent of Total Ortho's argument and wholly fails to satisfy its burden on the first element of the collateral estoppel affirmative defense.

2

But by framing the "issue" in such general terms, Total Ortho wholly ignores the substantial differences in *allegations* between the *Subin* FAC[2] and Plaintiffs' Complaint in this lawsuit. But this Complaint names forty-three different defendants (including medical provider defendants, versus only three named legal services defendants in the *Subin* FAC), claimants, and predicate acts, and an entirely different association-in-fact enterprise. The Complaint also contains additional specific allegations regarding damages that were not in the *Subin* FAC, such as:

> Tradesman was obligated under the terms of the General Agency Agreement to hire and retain additional personnel specifically to address fraudulent claims beyond the normal scope of business; the exclusive claim adjustment firm Gallagher Bassett could not properly manage the significant numbers of fraudulent claims and specialized personnel were required at Tradesman's expense [Complaint ¶ 351].

The Complaint further makes allegations regarding Tradesman's damages in the form of artificially inflated loss ratios incurred as a result of fraudulent claims and expense [Complaint ¶¶ 354, 356.d].

Because these allegations are not contained in the *Subin* FAC, Judge Gonzalez could not have decided these issues with respect to RICO standing. Plaintiffs' Complaint contains allegations that are materially different than those in the *Subin* FAC and changes both the damages and causation analysis. Hence, Total Ortho has not carried its burden on the first two elements.

**2.    Plaintiffs were not afforded a full and fair opportunity to litigate the issue of standing.**

Because "collateral estoppel is an equitable doctrine - not a matter of absolute right," its "application is influenced by considerations of fairness in the individual case." *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004). In fact, "there are some circumstances that so undermine confidence in the validity of an original determination as to render application of the doctrine impermissibly 'unfair.'" *Sec. Exch. Commn. v. Monarch Funding Corp.*, 192 F.3d 295,

---

[2] The September 16 Order makes clear it did not consider the merits of any allegations contained in the *Subin* SAC. Rather, it simply deemed the *Subin* FAC to be the operative pleading and incorporated by reference the June 19 Order. *See* No 1:24-cv-05033-HG, Doc. 68 at 1.

3

304 (2d Cir. 1999); *see also Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995) ("[I]t is not to be mechanically applied.").

For example, the Second Circuit has declined to apply collateral estoppel where the defendant was deprived of a fair opportunity to litigate based on, among other considerations, the trial judge's statements that demonstrated "fundamental misunderstanding of the basis" of a party's claim. *Guo Zhong Wu v. Qiao Lin (In re Qiao Lin)*, 576 B.R. 32, 48 (Bankr. E.D.N.Y. 2017) (quoting *Ali v. Mukasey*, 529 F.3d 478, 491 (2d Cir. 2008)). Here, the procedural irregularities in the two *Subin* Orders, along with the Court's questionable grounds and reasoning, clearly demonstrate that Plaintiffs were not afforded a full and fair opportunity to litigate the issue.

   a. **The *Subin* Order clearly raises the specter of fundamental unfairness.**

On September 16, the *Subin* Court essentially issued a death penalty sanction against Roosevelt and Tradesman, claiming they exceeded a limitation in the June 19 Order, which supposedly "permitted only a narrow amendment." *See* No 1:24-cv-05033-HG, Doc. 68. But the June 19 Order contained no express limitations on leave to amend: "For the reasons explained herein, the AC is dismissed without prejudice and with leave to amend." *Subin*, 2025 U.S. Dist. LEXIS 117080, at *27. In addition to retroactively narrowing the scope of leave to amend, Judge Gonzalez (1) converted, *sua sponte*, a letter motion from the defendants into a motion to reconsider the prior grant of leave even though no such relief was requested, (2) altered the scope of the June 19 Order,[3] (3) reconsidered and denied the prior grant of leave to amend, (4) disregarded the *Subin* SAC in its entirety, and (5) dismissed with prejudice the *Subin* FAC for the reasons stated in the June 19 Order. And despite expressly stating that "the Court makes no judgment on the merits of

---

[3] *cf. Kuntz v. New York State Bd. of Elections*, 924 F.Supp. 364, 366 (N.D.N.Y. 1996) (stating "the Court was careful to grant plaintiff 'leave to amend his complaint, but *only with regard to the second, and third causes of action*.'") (emphasis in original).

4

the SAC" that had been on file for nearly two months, Judge Gonzalez concluded that further leave to amend would be futile and prejudicial. The stated basis for prejudice was an *upcoming* discovery deadline even though discovery had been stayed for months.

In short, Roosevelt and Tradesman were not afforded an opportunity to conduct discovery, were not afforded an evidentiary hearing, and were not even permitted to rely on the allegations in the *Subin* SAC, which very clearly addressed all outstanding issues and demonstrated Plaintiffs' standing under ***any*** interpretation RICO standing. Plaintiffs' case was ultimately dismissed for allegedly exceeding a restriction on the grant of leave that was only communicated for the first time in the September 16 Order. This is a compelling showing of unfairness that denied Plaintiffs a "full and fair opportunity to litigate" standing. *Montana v. United States*, 440 U.S. 147 (1978).

**b. The *Subin* Order confirms a fundamental misunderstanding of Plaintiffs' claims**.

The *Subin* June 19 Order (which the Court incorporated into September 16 Order) was based upon a fundamental misunderstanding of the nature of the workers' compensation system. Specifically, Judge Gonzalez reached the final determination by reasoning the *construction employers* and *Workers' Compensation Board* faced with "fraudulent lawsuits" and "unnecessary legal fees" were the intended targets and directly injured parties, such that the employers' "decisions to seek coverage" somehow that makes Plaintiffs' injuries too remote. *See Subin*, 2025 U.S. Dist. LEXIS 117080 at 13-14, 17-20. This wholly ignores the fundamental role insurers and claims administrators play in the Workers' Compensation Scheme and personal injury litigation.

Insurers and claims administrators are the ultimate source for payment and approval of claims, and insurance is the most reliable source of funding. Insurers—not the employers—pay the claims, provide for the insured's defense, and make payment decisions based on the claim administrator's review the pleadings, medical treatment, and medical opinions submitted by the attorneys and medical providers. The investigation of claims is part and parcel to this process. The

5

consideration and payment of all claims are asserted, investigated, litigated, paid, and/or settled against the backdrop of labor laws and ethical duties owed by the claimants' attorneys and medical providers. *See* N.Y. WORK. COMP. L. § 114. As a result, construction employers and the Workers' Compensation Board are not the directly injured parties of the scheme at issue in the *Subin* lawsuit.

The *Subin* Orders further compound and leverage this misunderstanding by repeatedly – and incorrectly – stating Plaintiffs must have been the "intended target[] of the RICO violation[]" to have standing. *See Subin*, 2025 U.S. Dist. LEXIS 117080 at 11-13, 14, 17-20. But the use of this foreseeability standard in RICO cases has been rejected by the U.S. Supreme Court and the Second Circuit. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 10 (2010); *see also Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 612-13 (2025); *see also Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 145 (2d Cir. 2018). Nevertheless, Total Ortho argues *this* Court must give preclusive effect to the June 19 Order, which is based, in significant part, on a misunderstanding of Plaintiffs' claims and bad case law. The Court should reject this request.

Finally, Plaintiffs appealed the September 16 Order, which is subject to *de novo* review by the Second Circuit because the denial of leave to amend is based on an interpretation of law (i.e., futility). *421-A Tenants Ass'n v. 125 Court St. LLC*, 760 F.App'x 44, 50 (2d Cir. 2019). The precedential value of the September 16 Order could be significantly, if not completely, diminished.

### III. CONCLUSION

Collateral estoppel "is not to be mechanically applied, for it is capable of producing extraordinary harsh and unfair results." *Remington Rand Corp.*, 68 F.3d at 1486. Such is precisely the situation here. Applying collateral estoppel here would render the doctrine "impermissibly unfair" and should be rejected by this Court. *Monarch Funding Corp.*, 192 F.3d at 304.

Dated: October 14, 2025

Respectfully submitted,

**THE WILLIS LAW GROUP, PLLC**

By: */s/ William J. Clay*
    **WILLIAM J. CLAY**
    **MICHAEL A. GRAVES**
    **AARON E. MEYER**
    1985 Forest Lane
    Garland, Texas 75042
    Telephone: 214-736-9433
    Facsimile: 214-736-9994
    Service Email: service@thewillislawgroup.com

***ATTORNEYS FOR PLAINTIFFS***
***ROOSEVELT ROAD RE, LTD.,***
***TRADESMAN PROGRAM MANAGERS, LLC,***
***and IONIAN RE, LLC***

cc: All parties and counsel of record (electronic)

7