**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROOSEVELT ROAD RE, LTD.; TRADESMAN PROGRAM MANAGERS, LLC; and IONIAN RE, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LIAKAS LAW, P.C.; DEAN N. LIAKAS; JOHN DOE NOS. 1-25; XYZ CORPORATION NOS. 1-25; BROOKLYN MEDICAL PRACTICE, P.C.; SAYEEDUS S. SALEHIN, M.D.; ADVANCED ORTHOPEDICS AND JOINT PRESERVATION P.C.; STAN AVSHALUMOV, D.O.; COMMUNITY MEDICAL IMAGING OF BROOKLYN P.C.; ANDREW J. MCDONNELL, M.D.; ORTHOPAEDICS SPINE & SPORTS MEDICINE, LLC, s/d/b/a TOTAL ORTHOPAEDICS & SPORTS MEDICINE; VADIM LERMAN, D.O.; ABHISHEK KUMAR, M.D.; SHIVEINDRA JEYAMOHAN, M.D.; BIG APPLE PAIN MANAGEMENT, P.L.L.C.; RICHARD APPLE, M.D.; NORTH SHORE FAMILY CHIROPRACTIC, P.C.; TODD LAWRENCE LEBSON, D.C.; UNICORN ACUPUNCTURE, P.C.; DEKUN WANG, L.Ac; ENGLINTON MEDICAL, P.C.; SHIARREE EVARISTO, P.T.; ARKADIY SHUSTERMAN, D.O.; COUNTER POINT MEDICAL, P.C.; UPWARD MEDICAL, P.C.; MARK KOSTIN, M.D.; BROOKLYN PREMIER ORTHOPEDICS AND PAIN MANAGEMENT P.L.L.C.; FJ ORTHOPAEDICS AND PAIN MANAGEMENT P.L.L.C.; VAGMIN VORA, M.D.; JONATHAN SIMHAEE, M.D.; STEVEN HOROWITZ, M.D.; BL PAIN MANAGEMENT, P.L.L.C. d/b/a PAIN MANAGEMENT NYC; PAIN PHYSICIANS NY, P.L.L.C.; BOLESLAV KOSHARSKYY, M.D.; ROMAN SHULKIN, M.D.; LEONID REYFMAN, M.D.; MCCULLOCH ORTHOPAEDIC SURGICAL SERVICES, P.L.L.C. s/d/b/a NEW YORK SPORTS AND JOINTS ORTHOPAEDIC SPECIALISTS; KENNETH McCULLOCH-OTERO, M.D.; DAVID R. CAPIOLA, M.D.; GOTHAM NEUROSURGERY, P.L.L.C.; ANDERS COHEN, D.O.; GARDEN STATE ORTHOCARE LLC, d/b/a ORTHOCARE SURGICAL; RANDALL EHRLICH, M.D.; PRECISION PAIN MANAGEMENT, P.C.; and ARI BENJAMIN LERNER M.D., <br><br> Defendants. | Case No. 1:25-cv-00300-ENV-RML <br><br> ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LIAKAS LAW, P.C.**
**AND DEAN N. LIAKAS' MOTION FOR SANCTIONS**

**PILLSBURY WINTHROP
SHAW PITTMAN LLP**
James M. Catterson
Brianna S. Walsh
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax:    212.858.1500
james.catterson@pillsburylaw.com
brianna.walsh@pillsburylaw.com

*Attorneys for Defendants
Liakas Law, P.C. and Dean N. Liakas*

**TABLE OF CONTENTS**

**Page**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 3

    A.  The Parties and the Litigation Campaign............................................................. 3

    B.  Plaintiffs' Out-of-Court Efforts to Change the Law........................................... 4

    C.  Willis Law's Duplicative Complaints................................................................... 5

    D.  The <u>Subin</u>, <u>Schwitzer</u>, and <u>Hajjar</u> Dismissals.................................................. 6

    E.  Plaintiffs Completely Change Their Standing Theory......................................... 8

    F.  Willis Law Files *Qui Tam* Lawsuits Against Attorneys. ................................... 9

    G.  Plaintiffs' Media Campaign. .............................................................................. 10

    H.  Procedural History. ............................................................................................. 12

ARGUMENT ................................................................................................................... 13

POINT I  SANCTIONS ARE WARRANTED PURSUANT TO RULE 11............................... 13

    A.  Legal Standard. .................................................................................................. 13

    B.  Willis Law Failed to Conduct a Reasonable Inquiry Required by Rule 11....................... 15

    C.  Plaintiffs' Complaints Were Filed for the Improper Purpose of Using Federal Fraud Statutes to Suppress Claims, Representation, and Medical Treatment........................... 17

    D.  Plaintiffs' Claims Are Substantively Implausible, Factually Unsupported, and Could Not Have Been Advanced in Good Faith. ............................................ 20

    E.  Plaintiffs' and Willis Law's Misuse of Federal Fraud Statutes Has Harmed Liakas and Demonstrates the Need for Deterrence. ................................. 22

POINT II  PLAINTIFFS AND WILLIS LAW SHOULD BE SANCTIONED  PURSUANT TO THE COURT'S INHERENT POWER........................................................................ 23

    A.  Legal Standard. .................................................................................................. 23

    B.  Plaintiffs and Willis Law Have Engaged in Bad Faith Abuse of the Judicial Process..... 24

POINT III  WILLIS LAW SHOULD BE REQUIRED TO PAY LIAKAS' ATTORNEY FEES PURSUANT TO 28 U.S.C. § 1927 ................................................................................... 24

    A.  Legal Standard. .................................................................................................. 24

    B.  Willis Law Unreasonably and Vexatiously Multiplied these Proceedings....................... 25

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

<u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>,
421 U.S. 240 (1975)....................................................................................................24

<u>Ammann v. Sharestates, Inc.</u>,
2024 U.S. Dist. LEXIS 50808 (E.D.N.Y. Mar. 21, 2024)...................................13, 19

<u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>,
579 F.3d 143 (2d Cir. 2009)...................................................................................13

<u>Cameau v. Nat'l Recovery Agency, Inc.</u>,
2018 U.S. Dist. LEXIS 168227 (E.D.N.Y. Sept. 28, 2018)....................................17

<u>Charles v. Levitt</u>,
2016 U.S. Dist. LEXIS 95725 (S.D.N.Y. July 21, 2016) .......................................14

<u>Colliton v. Cravath Swaine & Moore LLP</u>,
2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. Sept. 23, 2008), aff'd, 356 F. App'x 535 (2d
Cir. 2009) ...............................................................................................................17

<u>Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>,
2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003)......................................................14

<u>Greater New York Insurance Company v. Liakas Law, P.C. et al.</u>,
No. 1:26-cv-00450-FB-PK (E.D.N.Y. Jan. 27, 2026) ...............................................4

<u>Greater New York Insurance Company v. Subin Associates, LLP et al.</u>,
No. 1:26-cv-00470-CBA-VMS (E.D.N.Y. Jan. 27, 2026) .........................................4

<u>Guzman v. The City of New York Housing Authority</u>,
Index No. 709449/2021 (N.Y. Sup. Ct. Queens Cty.) ...............................................21

<u>Ionian Re, LLC et al. v. Cedillo et al.</u>,
No. 1:24-cv-7969-DG-JRC (E.D.N.Y. Nov. 15, 2024) ..........................................4, 5

<u>Ionian Re, LLC v. Gorayeb & Associates, P.C. et al.</u>,
No. 1:24-cv-07098-WFK-PK (E.D.N.Y. Oct. 8, 2024)...........................................4, 10

<u>Jose Briones v. New York City Housing Authority et al.</u>,
Index No. 35029/2020E (N.Y. Sup. Ct. Bronx Cty.).................................................5

<u>Junwu Gong v. Sarnoff</u>,
2023 U.S. Dist. LEXIS 148971 (S.D.N.Y. Aug. 22, 2023)......................................19

Katzman v. Victoria's Secret Catalogue,
    167 F.R.D. 649 (S.D.N.Y. 1996), aff'd sub nom. Katzman v. Victoria's Secret
    Catalogue, Div. of The Ltd., Inc., 113 F.3d 1229 (2d Cir.1997)
    ...............................................................................................................................14, 20, 22

Lawrence v. Richman Grp. of CT LLC,
    620 F.3d 153 (2d Cir. 2010).........................................................................................13

LCS Grp., LLC v. Shire LLC,
    2019 U.S. Dist. LEXIS 43255 (S.D.N.Y. Mar. 8, 2019) .............................................14

Levy v. Aaron Faber, Inc.,
    148 F.R.D. 114 (S.D.N.Y. 1993) .............................................................................14, 20

Merchants Mutual Insurance Co. v. William Schwitzer & Associates, P.C. et al.,
    No. 1:25-cv-5859-DG-CHK (E.D.N.Y. Oct. 20, 2025)................................................4

Moss v. BMO Harris Bank, N.A.,
    258 F. Supp. 3d 289 (E.D.N.Y. 2017) .....................................................................14, 20, 22

Norris v. Grosvenor Mktg. Ltd.,
    803 F.2d 1281 (2d Cir. 1986)......................................................................................20

O'Malley v. New York City Transit Auth.,
    896 F.2d 704 (2d Cir. 1990)..................................................................................13, 14, 20

Ochoa v. Lakhi General Contractor Inc. et al.,
    Index No. 152787/2023 (N.Y. Sup. Ct. New York Cty.) ...........................................21

United States v. Prevezon Holdings, Ltd.,
    305 F. Supp. 3d 468 (S.D.N.Y. 2018)........................................................................24

Revson v. Cinque & Cinque, P.C.,
    221 F.3d 71 (2d Cir. 2000)..........................................................................................23

Roadway Exp., Inc. v. Piper,
    447 U.S. 752 (1980).....................................................................................................24

Rodriguez v. Alba Services Inc. et al.,
    Index No. 504703/2022 (N.Y. Sup. Ct. Kings Cty.)...................................................21

Roosevelt Rd. Re, Ltd. v. Subin,
    2025 WL 1713109 (E.D.N.Y. June 19, 2025) ....................................................6, 7, 16

Roosevelt Rd. Re, Ltd. v. Subin,
    No. 24-CV-05033 (HG), 2025 WL 3049937 (E.D.N.Y. Sept. 16, 2025)...............7, 16

Roosevelt Rd. Re, Ltd. v. William Schwitzer & Assocs., P.C.,
   No. 25-CV-3386 (BMC), 2026 WL 457063 (E.D.N.Y. Feb. 18, 2026)...............................7, 16

Roosevelt Road, Re, Ltd. et al. v. Hajjar et al.,
   No. 1:24-cv-1549-NG-CHK (E.D.N.Y. Mar. 1, 2024)..................................................... *passim*

Roosevelt Road Re, Ltd. et al. v. Liakas Law, P.C. et al.,
   No. 1:25-cv-00300-ENV-RML (E.D.N.Y. Jan. 17, 2025) ........................................................4

Roosevelt Road, Re, Ltd. et al. v. William Schwitzer & Associates P.C. et al.,
   No. 1:25-cv-3386-BC (E.D.N.Y. Jun. 16, 2025) ........................................................4, 7, 13, 16

Roosevelt Road, Re, Ltd. et al. v. Wingate Russotti, Shapiro, Moses & Halperin, LLP et
   al.,
   No. 1:24-cv-6259-NCM-VMS (E.D.N.Y. Sept. 6, 2024)...........................................................4

Roosevelt Road Re, Ltd. v. Haggar,
   No. 24-CV-1549 (NG) (CHK), 2026 WL682192 (E.D.N.Y. Mar. 11, 2026) .............7, 8, 9, 15

Roosevelt Road Re, Ltd., v. Subin et al.,
   No. 1:24-cv-05033-HG (E.D.N.Y. Nov. 26, 2024) .........................................................4, 6, 16

S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.,
   2014 U.S. Dist. LEXIS 170246 (S.D.N.Y. Dec. 9, 2014) .........................................................19

Solis v. Boston Tremont Housing Development Fund Corporation et al.,
   Index No. 802706/2021E (N.Y. Sup. Ct. Bronx Cty.)...............................................................21

Sorenson v. Wolfson,
   170 F. Supp. 3d 622 (S.D.N.Y. 2016), aff'd, 683 F. App'x 33 (2d Cir. 2017).......................24

Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
   682 F.3d 170 (2d Cir. 2012)....................................................................................................20

Tao An v. Despins,
   2023 U.S. Dist. LEXIS 134571 (S.D.N.Y. Aug. 2, 2023) ........................................................17

Toussaint v. NY Dialysis Servs., Inc.,
   230 F. Supp. 3d 198 (S.D.N.Y.), aff'd, 706 F. App'x 44 (2d Cir. 2017)................................20

United States of America, ex rel. Tradesman Program Managers, LLC v. Elefterakis
   Elefterakis & Panek, P.C. et al.,
   No. 25-cv-02853-JMF (S.D.N.Y. 2025), ECF No. 3................................................................9

United States of America, ex rel. Tradesman Program Managers, LLC v. Liakas Law,
   P.C. et al.,
   No. 25-cv-02859-JAV (S.D.N.Y. 2025), ECF No. 6................................................................10

Union Mutual Fire Insurance Company v. Liakas Law et al.,
No. 1:25-cv-1857-FB-CHK (E.D.N.Y. Apr. 3, 2025) ...............................................4

Union Mutual Fire Insurance Company v. Subin Associates, LLP et al.,
1:25-cv-02652-OEM-PCG (E.D.N.Y. May 12, 2025)...............................................4

Vasile v. Dean Witter Reynolds Inc.,
20 F.Supp. 2d 465 (E.D.N.Y. 1998) ........................................................14, 23

W.K. Webster & Co. v. Am. President Lines, Ltd.,
32 F.3d 665 (2d Cir. 1994).....................................................................13

## Statutes and Codes

United States Code
Title 28, Section 1927 .........................................................................1, 24
Title 31, Section 3730(e)(4)(A) ...................................................................10

New York Labor Law
Section 240.......................................................................................4

## Rules and Regulations

Federal Rules of Civil Procedure
Rule 9(b) ...................................................................................18, 22
Rule 11 ..................................................................................... *passim*
Rule 11(b) ......................................................................................13
Rule 11(b)(1)................................................................................17, 19
Rule 11(b)(1)-(3).................................................................................13
Rule 11(b)(2).............................................................................17, 20, 22
Rule 11(b)(3)....................................................................................17
Rule 11(c)(4)................................................................................14, 22

Defendants Liakas Law, P.C. and Dean N. Liakas (hereinafter collectively referred to as collectively "Liakas"), by and through their attorneys, Pillsbury Winthrop Shaw Pittman LLP, respectfully submit this memorandum of law in support of their motion for sanctions against Roosevelt Road Re, Ltd. (hereinafter referred to as "Roosevelt"), Tradesman Program Managers, LLC (hereinafter referred to as "Tradesman"), and Ionian Re, LLC (hereinafter referred to as "Ionian" and collectively with Roosevelt and Tradesman, "Plaintiffs"), and their counsel The Willis Law Group (hereinafter referred to as "Willis Law"), pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereinafter referred to as "F.R.C.P.") and 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

This motion seeks sanctions against Plaintiffs and their counsel for engaging in an extraordinary pattern of litigation abuse, using federal courts and federal fraud statutes as nothing more than leverage in their campaign of lawfare. Since March 2024, Plaintiffs and Willis Law have flooded this District with a dozen civil RICO complaints alleging the *same* fraud scheme, the *same* enterprise structure, in the *same* geographic area, and during the *same* time period, each against a different combination of law firms and medical providers. This is not zealous advocacy; it is serial, copy-paste litigation designed to extract collateral consequences merely from the filing itself. Rule 11 exists to prevent precisely this type of conduct. Attorneys are required to conduct a reasonable inquiry before initiating a lawsuit and may not advance claims that are legally defective, factually unsupported, or pursued for purposes unrelated to the adjudication of a dispute. Willis Law violated each of those obligations here.

For all the reasons set forth in Liakas's <u>sub judice</u> motion to dismiss, the Complaint against Liakas asserts a civil RICO theory that is wholly unsustainable and factually implausible. Indeed, Plaintiffs' enterprise and fraud theories collapse under the Complaint's own allegations. Plaintiffs allege a coordinated scheme involving fabricated or exaggerated injuries, centralized

1

control over medical treatment, and coordinated litigation activity. However, the medical records underpinning Plaintiffs' allegations show the claimants named in the Complaint were treated by more than 100 medical professionals *not* alleged to be part of the scheme. Plaintiffs offer no explanation why a fraud enterprise would repeatedly route claimants to non-conspirator providers for independent medical diagnoses and treatment, which would substantially increase the risk of detection and undermine any shared purpose or profit. Similarly, some of the claimants Plaintiffs identify are represented in their underlying, ongoing state law cases by attorneys other than Liakas. Again, there is no explanation for why non-party attorneys would be involved in a conspiracy to prosecute what the Complaint alleges are fictitious claims.

While filing one baseless civil RICO claim against a law firm is stigmatizing, Plaintiffs' and Willis Law's cavalier conduct does not end there. In addition to the two other RICO claims Willis Law has filed against Liakas in this District, Willis Law and Tradesman have also filed a False Claims Act ("FCA") *qui tam* complaint against Liakas and its principals. That meritless action, based entirely on publicly available information, is barred by statute. Unsurprisingly, the United States declined to intervene. Yet the timing, use and substance of that filing—deployed alongside the RICO actions, amplified through public channels, and nearly identical to the FCA claim brought against Mr. Liakas' cousins on the same day—underscore the nature of Plaintiffs' and Willis Law's lawfare: when one stigmatizing federal fraud theory falters, another is launched to compound reputational harm and economic pressure. This litigation campaign has also been accompanied by coordinated extrajudicial conduct, including trying to bribe injured construction workers to not file claims, timing the filing of this Complaint with a press conference outside of this Courthouse, and hiring a public relations firm to amplify the accusations.

Rather than conduct the reasonable inquiry required by Rule 11 of the Federal Rules of

2

Civil Procedure before making their voluminous filings, Willis Law effectively just hit "copy" and "paste." That is plainly impermissible. Worse, even after three nearly identical civil RICO lawsuits brought by Willis Law in this District were dismissed for lack of standing, insufficient RICO claims, and on collateral estoppel grounds, Willis Law has pushed forward with its claims, forcing dozens of parties to incur substantial costs defending baseless allegations. Because the record demonstrates that dismissal alone will not deter this conduct, sanctions, including an award of attorneys' fees and costs, are necessary to put a stop to this waste-howling wilderness of lawfare.

## STATEMENT OF FACTS

### A.  The Parties and the Litigation Campaign.

Plaintiffs are entities purportedly involved in providing reinsurance and related management services for workers' compensation and personal injury claims. See ECF No. 1 at ¶¶ 3–5, 335, 340, 350. Roosevelt and Tradesman are founded and led by Daniel Hickey, Jr. See Declaration of Brianna S. Walsh (hereinafter referred to as the "Walsh Decl."), Ex. A. Ionian is led by John Kalafatis. See ECF No. 1 at ¶¶ 5, 340.

Mr. Kalafatis is the president and chief executive officer of Andromeda Advantage Inc. (hereinafter referred to as "Andromeda"), which hosts a webpage titled "Combating Staged Construction Site Accidents," that publicly advocates against allegedly staged construction accident claims and monitors construction-related legislation. See Walsh Decl., Ex. B. He is also director emeritus of New York City's Special Riggers Association (hereinafter referred to as "NYCSRA"), which "actively monitors NYC legislation, regulations, and policy changes that impact" the construction industry. Id., Ex. C. Further, Mr. Kalafatis is affiliated with Skyline Restoration (hereinafter referred to as "Skyline"), a construction company that has been named as a defendant in more than 100 personal injury actions brought under New York's Scaffold Law

3

(hereinafter referred to as the "Scaffold Law"). Id., Ex. D.[1]

Willis Law, led by Kirk Willis, represents Plaintiffs in this and numerous related actions. Since March 1, 2024, Willis Law has commenced at least eleven civil RICO actions in this District asserting materially identical fraud schemes against various law firms and medical providers.[2] Mr. Willis and other attorneys at Willis Law signed the Complaint in this action. ECF No. 1 at 201. Of these, Roosevelt and Tradesman are plaintiffs in five, Ionian is a plaintiff in three, and Skyline is a plaintiff in one.

### B. Plaintiffs' Out-of-Court Efforts to Change the Law.

Before initiating serial federal litigation, Plaintiffs and their affiliates pursued legislative and regulatory efforts aimed at curtailing New York's Scaffold Law. In June 2020, Mr. Kalafatis signed a letter on behalf of NYCSRA to then-Governor Andrew Cuomo requesting a twelve-month moratorium on New York's Scaffold Law. Walsh Decl., Ex. E. This was unsuccessful. In January 2024, Plaintiffs supported the introduction of the Staged Accident Bills (A8981A and S8413A) addressing alleged staged accident claims, which was sponsored by New York Assemblyman and Chair of the Insurance Committee David Weprin. See id., Exs. F-G. As of the

---

[1]  The Scaffold Law imposes strict liability on employers and property owners if construction workers get injured in certain ways. See generally N.Y. Labor Law § 240.

[2]  See Roosevelt Road, Re, Ltd. et al. v. Hajjar et al., No. 1:24-cv-1549-NG-CHK (E.D.N.Y. Mar. 1, 2024) (hereinafter referred to as "Hajjar"); Roosevelt Road, Re, Ltd. et al. v. Wingate Russotti, Shapiro, Moses & Halperin, LLP et al., No. 1:24-cv-6259-NCM-VMS (E.D.N.Y. Sept. 6, 2024) (hereinafter referred to as "Wingate"); Ionian Re, LLC v. Gorayeb & Associates, P.C. et al., No. 1:24-cv-07098-WFK-PK (E.D.N.Y. Oct. 8, 2024); Ionian Re, LLC et al. v. Cedillo et al., No. 1:24-cv-7969-DG-JRC (E.D.N.Y. Nov. 15, 2024) (hereinafter referred to as "Cedillo"); Roosevelt Road Re, Ltd., v. Subin et al., No. 1:24-cv-05033-HG (E.D.N.Y. Nov. 26, 2024); Roosevelt Road Re, Ltd. et al. v. Liakas Law, P.C. et al., No. 1:25-cv-00300-ENV-RML (E.D.N.Y. Jan. 17, 2025); Union Mutual Fire Insurance Company v. Liakas Law et al., No. 1:25-cv-1857-FB-CHK (E.D.N.Y. Apr. 3, 2025); Union Mutual Fire Insurance Company v. Subin Associates, LLP et al., 1:25-cv-02652-OEM-PCG (E.D.N.Y. May 12, 2025); Roosevelt Road, Re, Ltd. et al. v. William Schwitzer & Associates P.C. et al., No. 1:25-cv-3386-BC (E.D.N.Y. Jun. 16, 2025) (hereinafter referred to as "Schwitzer"); Merchants Mutual Insurance Co. v. William Schwitzer & Associates, P.C. et al., No. 1:25-cv-5859-DG-CHK (E.D.N.Y. Oct. 20, 2025); Greater New York Insurance Company v. Liakas Law, P.C. et al., No. 1:26-cv-00450-FB-PK (E.D.N.Y. Jan. 27, 2026); Greater New York Insurance Company v. Subin Associates, LLP et al., No. 1:26-cv-00470-CBA-VMS (E.D.N.Y. Jan. 27, 2026).

date of this filing, the proposed legislation appears to have died in committee.

Plaintiffs have also undertaken efforts to resolve potential claims outside the judicial process, including by offering payments to injured workers in exchange for refraining from pursuing claims. For example, in 2020, payments were offered to a man named Jose Briones. Id., Exs. H-J. The first offer was made by Skyline through a check issued by OneTeam Restoration Inc. (hereinafter referred to as "OneTeam"), an entity affiliated with Skyline,[3] in the amount of $10,000. Id., Ex. H. A second offer, in the amount of $100,000, was made by Ionian. Id., Ex. I. During the second encounter, a Skyline superintendent and employee told Mr. Briones that the payment was intended not only to compensate him for his injuries, but to also protect Skyline's insurance and avoid renewal issues. Id., Ex. J at 9, 11–12. That interaction was captured on video. Id. at ¶ 13.

On March 17, 2025, another injured worker, William Pino Navia, signed a notarized affidavit under penalty of perjury stating that "Skyline . . . routinely approached injured workers and attempted to pay them off on behalf of the Kalafatis Related Companies." Id., Ex. K at ¶ 30.

### C. Willis Law's Duplicative Complaints.

As described in Liakas' sub judice motion to dismiss, see ECF Nos. 131–33, the twelve Willis Law-drafted civil RICO lawsuits filed in this District are strikingly similar. Each alleges substantially the same scheme: that law firms, medical providers, and unidentified "Runners" direct claimants to stage accidents, fake or exaggerate their injuries and seek unnecessary medical treatment in order to inflate settlements. See, e.g., ECF No. 1 at ¶ 60; Hajjar, ECF No. 79 at ¶ 29; Cedillo, ECF No. 70 at ¶ 20.

---

[3] See Jose Briones v. New York City Housing Authority et al., Index No. 35029/2020E (N.Y. Sup. Ct. Bronx Cty.), NYSCEF Doc. 33 at ¶¶ 12–15, 17 (identifying relationship between Skyline and OneTeam); see also id., NYSCEF Doc. No. 42 (contract identifying OneTeam as a Skyline subcontractor).

Comparison of the complaints using plagiarism detection software (Turnitin iThenticate) are staggering and damning. The figures submitted with this motion, see Walsh Decl., Ex. L, demonstrate that allegations are often repeated verbatim across actions. When the entire complaints are compared against the entire complaint Willis Law RICO first filed in this District, there is, on average, a 59% similarity according to the plagiarism-detection software. Id. Four of these lawsuits are at least 74% similar. Id.

In December 2025, in one of Plaintiffs' cut-and-paste complaints, Hajjar, Judge Gershon criticized Willis Law's practice of alleging the same—or substantially similar—damages across the various RICO complaints. See Walsh Decl., Ex. M at 43:20–49:3. Willis Law admitted that the damage figures it had included in many of its RICO complaints were not, in fact, defendant-specific. Id. at 45:4–14. In response, the Court declared that was "just plain wrong and you're not allowed to do that. Period." Id. at 46:4–10. Judge Gershon then sua sponte warned Willis Law that knowingly alleging damages applicable to other defendants in separate cases "get[s] close to a Rule 11 violation." Id. at 46:4–15. Plaintiffs have not attempted to correct this defect in *any* of their RICO pleadings.

**D.  The Subin, Schwitzer, and Hajjar Dismissals.**

Three of Plaintiffs' civil RICO complaints filed in this District have reached the decisional phase, and each one has been dismissed. In one of Plaintiffs' duplicative complaints, Roosevelt Road Re, Ltd., v. Subin et al., No. 1:24-cv-05033-HG (E.D.N.Y. Nov. 26, 2024) (hereinafter referred to as the "Subin Matter"), Judge Gonzalez dismissed materially identical RICO claims brought by Roosevelt and Tradesman for lack of standing, holding that Plaintiffs' alleged injuries were derivative and legally insufficient. See Roosevelt Rd. Re, Ltd. v. Subin, 2025 WL 1713109, at *1, *5-6 (E.D.N.Y. June 19, 2025). Although the court granted leave to amend in an abundance of caution, it predicted that "amendment will probably be futile." Id. at

6

*8. Plaintiffs amended by attempting to recast themselves as primary insurers, rather than reinsurers. See Subin Matter, ECF No. 56 at ¶¶ 44–63. The Court rejected that obvious ploy, found that Plaintiffs had improperly recast their theory by filing what was effective "a new lawsuit," and dismissed the case with prejudice. Roosevelt Rd. Re, Ltd. v. Subin, No. 24-CV-05033 (HG), 2025 WL 3049937, at *4 (E.D.N.Y. Sept. 16, 2025).

In Schwitzer, Judge Cogan dismissed the RICO claims brought by Roosevelt and Tradesman. See Roosevelt Rd. Re, Ltd. v. William Schwitzer & Assocs., P.C., No. 25-CV-3386 (BMC), 2026 WL 457063, at *1 (E.D.N.Y. Feb. 18, 2026). Noting that, Judge Gonzalez had already dismissed one of their lawsuits in the Subin Matter because plaintiffs lacked RICO standing, Judge Cogan found that the plaintiffs were collaterally estopped from relitigating that issue. Id. at *4. Specifically, Judge Cogan rejected plaintiffs' efforts to amend their complaint and "repackage[] the factual allegations to appear as if they are not as far removed from the alleged fraud" to suggest they have RICO standing. Id. at *2. Notably, Judge Cogan specifically referenced the instant case, (id. at *1 n.1) and observed that this case, Schwitzer and the Subin Matter allege "virtually identical racketeering schemes" based on substantially the same facts. Id.

Most recently, Judge Gershon dismissed nearly identical RICO claims, also brought by Roosevelt and Tradesman.  See Roosevelt Road Re, Ltd. v. Haggar, No. 24-CV-1549 (NG) (CHK), 2026 WL682192, at *17 (E.D.N.Y. Mar. 11, 2026) (hereinafter referred to as "Haggar").[4] Like Judge Cogan, Judge Gershon noted that plaintiffs' complaint was "very similar" to the complaint in the Subin Matter, "alleging a fraudulent scheme that is nearly identical." Id. at *12. Rather than dismiss on collateral estoppel grounds, however, Judge Gershon evaluated the RICO claims and found there were "fundamental deficiencies"; the

---

[4] Haggar is the same lawsuit as Hajjar, No:1:24-cv-1549-NG-CHK.

7

complaint: failed to establish proximate cause, including because reinsurers were more than one step removed from the alleged fraudulent conduct; failed to allege a common purpose; failed to allege "the requisite interpersonal relationships necessary to establish an association-in-fact"; and failed to plausibly plead that the defendants entered into an agreement. Id. at *5, 13. The Court dismissed the RICO claims and declined to exercise supplemental jurisdiction over the remaining state law claims. Id. at *17.

### E. Plaintiffs Completely Change Their Standing Theory.

As indicated above, shortly after they filed their soon-to-be rejected amendment in the Subin Matter, Plaintiffs tried to cure their standing deficiencies in this case by submitting declarations from Messrs. Hickey and Kalafatis, and Tradesman's General Counsel, Thomas F. Kelly, III, asserting, for the first time, that, contrary to the averments in the Complaint, they were actually primary insurers, not reinsurers. See, e.g., ECF Nos. 132-1–3. They claimed that Accredited Casualty and Surety Company, which was the primary insurer by contract, "substituted itself with Roosevelt which placed Roosevelt in the joint role of primary insurer[.]" ECF No. 132-1 at ¶ 5. It is beyond cavil that those assertions are wholly at odds with the allegations in the Complaint.

At the same hearing discussed above where Judge Gershon raised the possibility that Willis Law had also committed a Rule 11 violation in her case, Willis Law feebly attempted to employ that exact same tactic to cure its fatal standing deficiency. See Walsh Decl., Ex. M at 13:21–20:6. Judge Gershon expressed skepticism. See id.  The Court explained that nowhere in the "very, very lengthy complaint" did Roosevelt allege that it funded the claims up front and noted this new theory was "completely contrary to the first amended complaint, which refers to reimbursement[.]" Id. at 14:8–11, 23–25. The Court asked: "What's going on here?" Id. at

14:12. Willis Law argued that these allegations were not completely contradictory to the Complaint and stated that the Complaint was merely unclear. Id. at 13:12-20; 15:1-12; 19:24-20:1; 20:7-8. Judge Gershon flatly rejected that argument, astutely observing the following:

> [T]here is not a single thing that you've been discussing that exists in the first amended complaint . . . Look, let's not be funny about this. It's not about more clearly. It's not in the first amended complaint at all, not a word. The word Accredited doesn't appear. Nothing. None of this appears. This isn't oh, we have to be a little bit more clear. . . . Not helpful to not be completely candid as we discussed this. We have a complicated case. It's not helpful to me, unless you're going to be completely candid.

Id. at 19:21–23; 20:2-7; 20:9-11. Judge Gershon subsequently denied Willis Law's motion to amend, see Hajjar, Electronic Order dated January 13, 2026, and dismissed the complaint, see Haggar, No. 24-CV-1549 (NG) (CHK), 2026 WL682192, at *17. In that dismissal, the Court noted that "to stave off dismissal for lack of proximate causation, Plaintiffs asserted facts at oral argument that were markedly different from those pled in [Plaintiffs' First Amended Complaint]." Id. at *12 n.9.

### F. Willis Law Files *Qui Tam* Lawsuits Against Attorneys.

On April 1, 2025, with their RICO offensive faltering, Willis Law filed two nearly identical *qui tam* lawsuits on behalf of Tradesman. One named Mr. Liakas' cousins, alleging that they submitted fraudulent claims to the government when they applied for and received Paycheck Protection Program loans during COVID. See United States of America, ex rel. Tradesman Program Managers, LLC v. Elefterakis Elefterakis & Panek, P.C. et al., No. 25-cv-02853-JMF (S.D.N.Y. 2025) (hereinafter referred to as the "Elefterakis *Qui Tam*"), ECF No. 3. After the United States declined to intervene, see id., ECF No. 2, Willis Law voluntarily dismissed that case. Id., ECF No. 7.

The other *qui tam* lawsuit that Willis Law filed the same day—which, of course, was essentially a copy-paste job of the first—named Liakas Law, Mr. Liakas, and Mr. Liakas's two

brothers as defendants. See United States of America, ex rel. Tradesman Program Managers, LLC v. Liakas Law, P.C. et al., No. 25-cv-02859-JAV (S.D.N.Y. 2025) (hereinafter referred to as the "Liakas *Qui Tam*"), ECF No. 6. Like the lawsuit filed against the Liakases' cousins, this complaint also alleged—based entirely on publicly available information, which is improper under the "public disclosure bar" found in 31 U.S.C. § 3730(e)(4)(A)—that the defendants submitted fraudulent claims to the government. Id. On January 14, 2026, the United States once again declined to intervene, id., ECF No. 7, and the complaint was unsealed, id., ECF No. 6.

The very next day, the iFraud Foundation (hereinafter referred to as "iFraud"), an organization purportedly designed to "combat insurance fraud by fostering a collaboration among defense stakeholders," posted the following on its LinkedIn page:

> This episode of the Deep Dive looks at the actions of the infamous Liakas Law but not regarding defense of a staged accident, or in connection with any of the RICO suits which they are named defendants in. This Deep dive looks at the False Claims Act lawsuit filed against Liakas Law and its principals for allegedly defrauding the Paycheck Protection Program (PPP).

See Walsh Decl., Exs. N-O. Linked to this post was a pre-scripted 11-minute-and-34-second podcast that discussed the complaint in detail, even though it had only been made public hours before. Id., Ex. P at ¶ 19.[5] This is more evidence of a coordinated smear campaign of lawfare.

**G. Plaintiffs' Media Campaign.**

Plaintiffs and Willis Law have embarked on a media campaign. Tradesman hired a public relations firm, Gotham Government Relations (hereinafter referred to as "Gotham"), which helped orchestrate a January 17, 2025 press conference in front of this Courthouse, a flyer for which read as follows: "Exposing Staged Accidents at Construction Sites." See Walsh Decl.,

---

[5] To date, we have identified a third FCA lawsuit that Willis Law filed against attorneys. See United States of America, ex rel. Rajson Investigations, LLC v. Caesar, Napoli & Spivak PLLC f/k/a Caesar and Napoli, P.C., No. 1:25-cv-03798-JGK (S.D.N.Y.), ECF No. 7. Again, the United States declined to intervene. Id., ECF No. 6. Because these complaints are not publicly available until they are unsealed, it is possible there are others.

Ex. Q. This press conference coincided with Willis Law's filing the instant Complaint on the same day. See ECF No. 1. Mr. Kalafatis' affiliates, including Andromeda, promoted this press conference online, see, e.g., Walsh Decl., Ex. R, and Plaintiffs and Ionian even put out a press release to summarize the press conference and boast that it was attended by "[m]ore than 100 people," id., Ex. S.

In furtherance of their campaign to litigate via the press and social media, Mr. Willis encouraged attendees to read the instant Complaint, and he disparaged personal injury attorneys, who he claimed were "putting up the scheme." Id., Ex. T at 4:19-21. In one "summary" of the instant Complaint that Gotham provided, it stated that Liakas "is the leading entity in a widespread fraud scheme involving staging construction accidents (covered extensively by several national and local media outlets, as detailed below) and submitting fraudulent insurance claims." See Declaration of Dean N. Liakas (hereinafter referred to as the "Liakas Decl."), Ex. E.

Mr. Willis has made at least one appearance on an iFraud podcast, where he discussed the pending RICO lawsuits he filed. See Walsh Decl., Ex. U. During that appearance, he stated that the lawyers had engaged "in fraudulent behavior" in connection with construction accident claims. Id. at 1:24-31. Mr. Willis has also participated in seminars and continuing legal education courses discussing staged construction accidents, including referencing the instant matter. See, e.g., id., Ex. V.

Further, Willis Law attorney Daniel A. Johnston effectively conceded that Willis Law is simply engaged in litigation warfare and is unconcerned with winning the lawsuits they file. After Willis Law's RICO complaint was dismissed without prejudice for lack of standing in the Subin Matter, he publicly characterized any disposition in favor of defendants as a "pyrrhic victory," posting an image on LinkedIn of a book titled "Pyrrhic Victory: Dismissal Without

11

Prejudice on Standing with Leave to Amend." Liakas Decl., Ex. D. This confirms that the objective is reputational harm through accusation, not adjudication on the merits.

As of the filing of this motion, there are over *50* articles on this subject from news sources, and Andromeda—one of Mr. Kalafatis' entities—has provided links to these sources, some of which purport to connect the staged accidents to "migrants, MS-13 and Russian fraudsters,"[6] some of which blame the staged accidents for the rise in costs in New York,[7] and others of which provide guidance to insurers.[8]

### H. Procedural History.

The Complaint was filed on January 17, 2025. See ECF No. 1. On June 23, 2025, Liakas moved to dismiss on various grounds, ECF No. 131-1, and that motion was fully briefed on August 21, 2025, and is sub judice, ECF Nos. 132–33. On February 9, 2026, Liakas, by and through its attorneys, served Plaintiffs and Willis Law with a letter demanding that Plaintiffs withdraw their Complaint in this action. See Walsh Decl., Ex. W. The Rule 11 Letter attached a draft of this motion. Id. On February 20, 2026, Liakas, by and through its attorneys, served Plaintiffs and Willis Law with a supplemental letter alerting Willis Law to the dismissal in the Schwitzer and additional persuasive authority, and reiterating its pending Rule 11 demand. Id.

---

[6]  See, e.g., Andromeda Advantage, Combating Staged Construction Site Accidents, https://www.andromedapublishers.com/stagedaccidents, (last visited Mar. 23, 2026), providing link to: Hamilton, Brad and Worrell, Georgia, MS-13, Russian mobsters use migrants in elaborate injury scam – even getting spinal surgery to pull it off: sources, NY POST, https://nypost.com/2024/06/16/us-news/ms-13-russian-mobsters-use-migrants-in-elaborate-injury-scam-even-getting-spinal-surgery-to-pull-it-off-sources/, (Jun. 16, 2024).

[7]  See, e.g., Andromeda Advantage, Combating Staged Construction Site Accidents, https://www.andromedapublishers.com/stagedaccidents, (last visited Mar. 23, 2026), providing link to: The Hatch Institute, Scam City - This Under-the-Radar "Tax" is a Big Reason why Housing Costs are Soaring, https://thehatchinstitute.org/2024/09/05/this-is-the-slug/, (Sept. 5, 2024).

[8]  See, e.g., Andromeda Advantage, Combating Staged Construction Site Accidents, https://www.andromedapublishers.com/stagedaccidents, (last visited Mar. 23, 2026), providing link to: Zigelman, Michael L., Depalma, Yousra A., and Arcitio, Christopher A., The Impact of RICO Lawsuits on Bodily Injury Claims: Guidance for Insurers, Westlaw Today, https://today.westlaw.com/Document/I33e581466c5a11efb5eab7c3554138a0/View/FullText.html?transitionType=Default&contextData=(sc.Default)&firstPage=true, (Sept. 6, 2024).

Ex. X. In a text order on March 13, the Court found that a pre-motion conference was "unnecessary" and permitted Liakas Law to file the instant motion. As of the filing of this motion, Plaintiffs have not agreed to withdraw the Complaint as to Liakas.

## ARGUMENT

### POINT I

### SANCTIONS ARE WARRANTED PURSUANT TO RULE 11

**A.  Legal Standard.**

Under Rule 11(b), each attorney who signs a pleading and submits it to the court certifies the following:

> [A]fter an inquiry reasonable under the circumstances: (1) [the pleading] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3); see also Lawrence v. Richman Grp. of CT LLC, 620 F.3d 153, 156 (2d Cir. 2010).

To avoid the risk of sanctions, "a party's counsel must undertake reasonable inquiry to ensure that the papers filed are well-ground in fact, legally tenable, and not interposed for any improper purpose." Ammann v. Sharestates, Inc., 2024 U.S. Dist. LEXIS 50808, at *5 (E.D.N.Y. Mar. 21, 2024) (citations and quotations omitted); see also W.K. Webster & Co. v. Am. President Lines, Ltd., 32 F.3d 665, 670 (2d Cir. 1994); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009). "[I]f it is clear that the action was destined to fail based on the facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law," sanctions are appropriate. O'Malley v. New York City Transit

13

Auth., 896 F.2d 704, 706 (2d Cir. 1990) (citations omitted).

Rule 11 is particularly significant in the civil RICO context "because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants." Charles v. Levitt, 2016 U.S. Dist. LEXIS 95725, at *24 (S.D.N.Y. July 21, 2016) (citations and quotations omitted); see also Moss v. BMO Harris Bank, N.A., 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017). Indeed, "improper RICO claims are even more egregious when levied against a law firm[.]" LCS Grp., LLC v. Shire LLC, 2019 U.S. Dist. LEXIS 43255, at *43 (S.D.N.Y. Mar. 8, 2019). Thus, "[c]ourts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to have been frivolous." Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 2003 WL 22227956, at *13 (S.D.N.Y. Sept. 26, 2003); see also, e.g., O'Malley, 896 F.2d at 709; Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc., 113 F.3d 1229 (2d Cir.1997); Levy v. Aaron Faber, Inc., 148 F.R.D. 114, 123 (S.D.N.Y. 1993).

Under Rule 11, courts may impose non-monetary directives (e.g., issuing admonitions, requiring additional education, striking papers, making disciplinary referrals) and monetary sanctions (e.g., court fines, attorney fees). See Fed. R. Civ. P. 11(c)(4). In fashioning an appropriate remedy, courts consider, among other things, whether the conduct was willful, was part of a pattern, and was repeated in other litigation. See Vasile v. Dean Witter Reynolds Inc., 20 F.Supp. 2d 465, 506 (E.D.N.Y. 1998).

Sanctions are mandated here because Willis Law failed to conduct any reasonable inquiry (see infra Point I.B), the Complaint was filed for the improper purpose of chilling advocacy (see infra Point I.C), and Plaintiffs' allegations lack any legal or factual foundation (see infra Point I.D). Further, even though not required by Rule 11, the consequences of Willis Law's conduct

14

are not merely hypothetical; Liakas has already been harmed by Willis Law's actions (see infra Point I.E).

### B. Willis Law Failed to Conduct a Reasonable Inquiry Required by Rule 11.

Rule 11 imposes an affirmative duty on counsel to conduct a reasonable inquiry into both the facts and the law before filing suit and to reassess those positions as litigation proceeds. Willis Law did neither. The Complaint in this action is not the product of a reasonable pre-filing investigation. It is materially indistinguishable from the civil RICO complaints Willis Law filed before it and from those it filed after. Rather than conduct an individualized inquiry into the facts or legal viability of claims against Liakas, Willis Law merely copy-and-pasted its allegations: that "[f]rom at least 2018 to the present, Defendants, together with others known and unknown for their financial benefit, orchestrated a widespread fraud scheme to defraud Plaintiffs and others[.]" Compare, e.g., Hajjar, ECF No. 79 at ¶ 27 with ECF No. 1 at ¶ 57.

The absence of any reasonable inquiry is further underscored by Willis Law's recycling of identical damages allegations across multiple RICO actions. In Hajjar, Judge Gershon confronted Willis Law with the fact that the damages alleged in that case were not specific to the defendants before her, but instead reflected aggregate losses purportedly attributable to other lawsuits and other actors. See Walsh Decl., Ex. M at 45:4–14. When Willis Law conceded that the damages figures were not defendant-specific, Judge Gershon warned them that alleging the same damages across different RICO cases "get[s] close to a Rule 11 violation" and is "not allowed . . . Period." Id. at 46:4–15. Judge Gershon then dismissed the complaint. Haggar, No. 24-CV-1549 (NG) (CHK), 2026 WL682192, at *17.

Despite that explicit warning and an adverse ruling in that case and two others—one of which expressly held that Willis Law was collaterally estopped from relitigating repackaged

15

claims that have already been decided[9]—Willis Law has continued to prosecute the Complaint in this action, which, like all the other complaints Willis Law filed on behalf of Roosevelt, alleges materially identical damages—using the same figures, the same time periods, and the same causation theory—without any effort to tailor those allegations to Liakas or to identify any loss directly attributable to it. Compare, e.g., ECF No. 1 at ¶ 338 ("Due to Defendants' perpetration of the Fraud Scheme, Roosevelt has incurred general liability claim adjustment expenses progressively rising from $14,020,890.00 in 2018 to $36,362,147.00 in 2019 (159% increase from 2018), to $58,694,694.00 in 2020 (61% increase from 2019), to $91,334,395.00 in 2021 (56% increase from 2020), and to $142,127,559.00 in 2022 (56% increase from 2021 and 914% increase in four years).") with Subin Matter, ECF No. 56 at ¶ 295 (same); Hajjar, ECF No. 79 at ¶ 173 (same); Schwitzer, ECF No. 68 at ¶ 518 (same). It defies credulity that at least four separate, independent RICO conspiracies—each identical in structure, scope, and duration— were simultaneously operating against the same plaintiffs, during the exact same time period, in the same geographic region causing similar (and in some cases the exact same) damages. No reasonable pre-filing inquiry could support such allegations.

The evolution of Plaintiffs' pleadings further confirms that these actions were not the product of reasonable investigation, but of tactical re-engineering in response to adverse rulings and identified defects. Rather than uncovering new facts, Plaintiffs repeatedly amended their pleadings—or, as with this case, simply offered self-serving declarations that contradict their

---

[9] In the Subin Matter, after Judge Gonzalez dismissed materially identical RICO claims, concluding that Plaintiffs' alleged injuries were derivative and legally insufficient and warning that amendment would likely be futile, see Subin I, 2025 WL 1713109, at *1, *5-6, Plaintiffs nevertheless filed an amended complaint asserting, for the first time, that they were "primary insurers" rather than reinsurers. See Subin Matter, ECF No. 56 at ¶¶ 44–63. Judge Gonzalez rejected that attempt to "recast the case" by pleading contradictory facts, and dismissed the action with prejudice. Subin II, No. 24-CV-05033 (HG), 2025 WL 3049937, at *3. Thereafter, Judge Cogan dismissed Schwitzer, finding Plaintiffs were collaterally estopped from relitigating what Judge Gonzalez had already decided. See Schwitzer, No. 25-CV-3386 (BMC), 2026 WL 457063, at *4. In that decision, Judge Cogan referred to the instant matter as being "virtually identical" to the matter he dismissed. Id. at *1.

16

own Complaint, see ECF Nos. 132-1–3—to address legal deficiencies identified by courts and defendants, without conducting any intervening factual investigation.

Rule 11 does not permit counsel to file and continue to prosecute pleadings without conducting a reasonable inquiry into their factual and legal basis, particularly after defects have been identified through judicial warnings and motion practice. Because Willis Law filed and continues to advocate a pleading that is unsupported, internally implausible, sanctions are warranted under Rule 11(b)(2) and (b)(3). Motive is not required for that conclusion.

### C. Plaintiffs' Complaints Were Filed for the Improper Purpose of Using Federal Fraud Statutes to Suppress Claims, Representation, and Medical Treatment.

Rule 11 prohibits filings made for an improper purpose, including those intended to harass, cause unnecessary expense, or exert pressure unrelated to the merits of the claims asserted. Fed. R. Civ. P. 11(b)(1). A court may infer improper purpose where, "in light of a party's conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior motive behind the lawsuit." Tao An v. Despins, 2023 U.S. Dist. LEXIS 134571, at *14 (S.D.N.Y. Aug. 2, 2023). Courts further consider whether the conduct is part of a broader pattern, whether similar tactics have been employed in other litigation, and whether the party persisted after learning its claims were groundless. See Colliton v. Cravath Swaine & Moore LLP, 2008 U.S. Dist. LEXIS 74388, at *36 (S.D.N.Y. Sept. 23, 2008), aff'd, 356 F. App'x 535 (2d Cir. 2009); Cameau v. Nat'l Recovery Agency, Inc., 2018 U.S. Dist. LEXIS 168227, at *7 (E.D.N.Y. Sept. 28, 2018). Here, the pattern and surrounding conduct show that these cases were not filed to be adjudicated. They were filed to be leveraged.

First, Plaintiffs' choice of statutes and targets makes the intended leverage obvious. Plaintiffs and Willis Law repeatedly invoke federal fraud statutes (most notably civil RICO and the FCA) against personal injury law firms and medical providers who represent and treat injured

17

construction workers. Those accusations are uniquely stigmatizing: the filing itself predictably inflicts reputational and economic pressure regardless of ultimate merit. The recurring combination of targets (personal injury firms and providers) and tools (RICO and FCA) reflects a strategy aimed at influencing behavior outside the courtroom—discouraging representation, discouraging treatment, and depressing settlement values through stigma.

Second, this campaign did not begin in court; instead, it moved to court when other avenues failed. Before turning to serial federal lawfare, Plaintiffs pursued legislative and regulatory efforts aimed at curtailing New York's Scaffold Law and reducing construction-injury recoveries. See, e.g., Walsh Decl., Exs. E–G. Plaintiffs also tried to bribe would-be complainants. See id., Exs. H–K. When those efforts failed or stalled, Plaintiffs' principals (particularly Mr. Hickey, the founder and chief executive officer of Roosevelt and the founder of Tradesman) did not abandon the objective; they changed the mechanism. Federal litigation became the substitute vehicle for pursuing the same end: suppressing claim volume and settlement value by targeting in a double-digit number of civil RICO lawsuits the lawyers and medical providers who service injured workers.

Third, the use of successive federal fraud statutes against the same targets confirms escalation rather than adjudication. When one "thermonuclear" accusation was challenged, another was launched. Willis Law and Tradesman filed FCA *qui tam* complaints against Liakas, its principals, and Liakas' cousins. See, e.g., Liakas Qui Tam, ECF No. 6; Elefterakis *Qui Tam*, ECF No. 3. These *qui tam* actions are based entirely on publicly available information and do not plead non-conclusory facts establishing fraud, much less do so with the particularity required by Rule 9(b). The function of the *qui tam* filings was therefore the same as the RICO filings: to brand targets as fraudsters under federal law and magnify the collateral consequences of those

18

bald accusations, regardless of whether the claims could be sustained. There can be no dispute that Plaintiffs had no purpose other than tarnishing reputations through these filings. Within hours after the *qui tam* complaint against Liakas became public, a pre-scripted podcast detailing the allegations in the complaint aired and was promoted on the LinkedIn page of an anti-insurance fraud entity with which Willis Law has aligned. See Walsh Decl., Exs. O–P.

Finally, Plaintiffs and Willis Law intentionally amplified these accusations outside the Courthouse. Filings were paired with public-facing activity, including a press conference staged at this Courthouse on the day the Complaint was filed (at which Mr. Willis disparaged personal injury attorneys, who he claimed were "putting up the scheme," Walsh Decl., Ex. T at 4:19–21), podcast appearances, LinkedIn posts that reveal Willis Law is unconcerned with winning its lawsuits, and professional presentations and CLE programming discussing the allegations while litigation was pending, along with dissemination efforts by retained public relations professionals. Id., Exs. P, U-V. Courts may consider such conduct in the totality of circumstances when assessing improper purpose. See Junwu Gong v. Sarnoff, 2023 U.S. Dist. LEXIS 148971, at *41 (S.D.N.Y. Aug. 22, 2023); Ammann, 2024 U.S. Dist. LEXIS 50808, at *7; S. Pac. Shipping Co. v. Redi-Fresh Produce Inc., 2014 U.S. Dist. LEXIS 170246, at *28-29 (S.D.N.Y. Dec. 9, 2014). Viewed collectively, this conduct confirms that the reputational and economic pressure, not success on the merits, was the intended result.

In sum, the scale, persistence, and coordination of this litigation campaign support the inference that Plaintiffs and Willis Law used federal courts and federal fraud statutes as leverage rather than vehicles for adjudication. This improper purpose independently warrants sanctions under Rule 11(b)(1) and confirms that dismissal alone will not deter this conduct.

19

### D. Plaintiffs' Claims Are Substantively Implausible, Factually Unsupported, and Could Not Have Been Advanced in Good Faith.

Plaintiffs' claims are not merely weak or debatable; they are substantively implausible and factually unsupported, in violation of Rule 11(b)(2) and (b)(3). Rule 11 sanctions are appropriate where, as here, an action was "destined to fail based on facts and existing precedent, and where no reasonable argument could be advanced to change or extend the present law[.]" O'Malley, 896 F.2d at 706 (citing Norris v. Grosvenor Mktg. Ltd., 803 F.2d 1281, 1283 (2d Cir. 1986)). Courts further approves sanctions where, as here, the claims lack evidentiary support and are "so clearly [ ] loser[s] that it is in the interest of justice to deter future plaintiffs and attorneys from prosecuting similar ones." Toussaint v. NY Dialysis Servs., Inc., 230 F. Supp. 3d 198, 223 (S.D.N.Y.), aff'd, 706 F. App'x 44 (2d Cir. 2017); Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 178 (2d Cir. 2012). Those principles apply with particular force in the civil RICO context, where the filing itself carries an "almost inevitable stigmatizing effect." Katzman, 167 F.R.D. at 660; Moss, 258 F. Supp.3d at 297; Levy, 148 F.R.D. at 123.

Plaintiffs' RICO theory depends on the existence of a coordinated enterprise and conspiracy involving staged accidents, fabricated or exaggerated injuries, and centralized control over medical treatment and litigation. But the factual materials upon which Plaintiffs rely demonstrate that their theory untenable. Indeed, a review of the medical records shows that Claimants were treated by more than 100 different medical professionals *not* alleged to be part of the scheme. Liakas Decl. at ¶¶ 24–25. Plaintiffs offer no facts whatsoever explaining how an alleged fraud enterprise could operate with so many non-conspirators independently evaluating injuries, ordering treatment, and continuing care without coordination, direction, or even awareness of one another. This is not a minor pleading defect; it is a structural impossibility. A

20

conspiracy premised on fabricated or exaggerated injuries would require centralized control over medical documentation and treatment. Plaintiffs' theory requires the Court to assume a self-defeating enterprise that repeatedly does the very thing conspirators would seek to avoid. That is not a plausible inference,[10] and a reasonable pre-filing inquiry would have revealed the same.

Plaintiffs' allegations regarding Liakas' purported role in directing accidents, controlling treatment, or orchestrating litigation are equally implausible when measured against the actual litigation history of the underlying claims. Liakas was replaced as counsel for four of the eight claimants, and independent law firms not alleged to be part of the enterprise or scheme continued to prosecute those very cases. See, e.g., Rodriguez v. Alba Services Inc. et al., Index No. 504703/2022 (N.Y. Sup. Ct. Kings Cty.), NYSCEF Doc. No. 20 (Claimant C); Ochoa v. Lakhi General Contractor Inc. et al., Index No. 152787/2023 (N.Y. Sup. Ct. New York Cty.), NYSCEF Doc. No. 49 (Claimant D); Guzman v. The City of New York Housing Authority, Index No. 709449/2021 (N.Y. Sup. Ct. Queens Cty.), NYSCEF Doc. No. 28 (Claimant G); Solis v. Boston Tremont Housing Development Fund Corporation et al., Index No. 802706/2021E (N.Y. Sup. Ct. Bronx Cty.), NYSCEF Doc. No. 27 (Claimant H). If the accidents were staged, the injuries fabricated or exaggerated, or the claims fraudulent, those firms would not have continued representation. Compounding the implausibility, Liakas Law did not even initiate the workers' compensation proceedings for two of the claimants; those petitions were filed by other law firms, again, not alleged to be part of the conspiracy. These facts are irreconcilable with Plaintiffs' assertion that Liakas Law directed recruitment, staged accidents, and controlled claim initiation.

---

[10] What is more plausible is that Liakas merely referred clients to trusted, competent medical professionals. This is a routine and rational professional practice, not evidence of a conspiracy. Where a client receives competent and responsive care, a lawyer has every incentive to refer future clients to that provider. Plaintiffs do not allege any facts demonstrating that referrals were conditioned on exaggerated diagnoses, that referrals were withdrawn when physicians exercised independent medical judgment, or that any provider altered treatment decisions to preserve referrals.

Unable to bridge this gap, Plaintiffs resort to conclusory allegations that Liakas "had an agreement or understanding as to the fraud scheme[.]" ECF No. 1 at ¶ 67. As detailed in its sub judice motion to dismiss, see, e.g., ECF No. 131 at 18–19, courts do not credit conclusory allegations offered to paper over implausible theories, and Rule 11 does not permit counsel to advance them. Further, for the reasons set forth in Liakas' pending motion to dismiss, Plaintiffs' (i) fail to plead fraud or fraudulent intent with the particularity required by Rule 9(b) because they do not identify a single false statement made by Liakas, nor do they allege facts showing Liakas knew any client's account was false; and (ii) lack standing because, as reinsurers, Plaintiffs were not the direct targets of the alleged misconduct.

Plaintiffs' allegations demonstrate that the Complaint lacked evidentiary support and legal viability from the outset, and that sanctions are independently warranted under Rules 11(b)(2) and (b)(3).

### E. Plaintiffs' and Willis Law's Misuse of Federal Fraud Statutes Has Harmed Liakas and Demonstrates the Need for Deterrence.

Rule 11 is not only remedial but serves as a deterrent. See Fed. R. Civ. P. 11(c)(4). Its purpose is to protect litigants and the courts from abusive filings that impose unjustified costs and collateral consequences, particularly where dismissal alone has proven insufficient to curb the conduct at issue. While Rule 11 does not require a showing of harm, the concrete and foreseeable consequences of Plaintiffs' and Willis Law's conduct demonstrate why sanctions are necessary to deter repetition.

Civil RICO allegations are uniquely destructive upon filing. Courts have long recognized that such claims carry an "almost inevitable stigmatizing effect," irrespective of their ultimate disposition. Moss, 258 F. Supp.3d 289 at 297 (citation and quotation omitted); Katzman, 167 F.R.D. at 660 (citation and quotation omitted). When such claims are invoked without

22

evidentiary support or legal viability, the filing itself inflicts reputational and economic harm independent of any adjudication on the merits. Here, that foreseeable harm materialized. Following the filing of this action, Liakas suffered immediate and concrete consequences unrelated to any judicial determination. Among other things, Liakas has been named in various news articles, forced to defend against the allegations while performing their work as attorneys, faced competitors invoking the mere existence of this RICO action to solicit its clients, lost prospective employees, and more. Liakas Decl. at ¶¶ 11–14, 19–22. Those consequences flowed directly from the stigma attached to being branded a racketeer under federal law, not from any finding of wrongdoing.

The record further demonstrates that dismissal alone is inadequate to deter this conduct. As detailed above, Willis Law repeatedly filed materially identical civil RICO actions in this District, persisted after judicial warnings and dismissals, amplified their allegations at press events and online, and escalated to additional federal fraud filings against the same defendants when earlier claims were challenged. Rule 11 exists to stop this type of conduct before it becomes the norm, and Rule 11 sanctions are therefore necessary. See Vasile, 20 F.Supp. 2d at 506 (granting sanctions where a party's "conduct was willful and malicious," present throughout various litigation, and reflective of "a pattern rising to the level of a personal crusade").

### POINT II

### PLAINTIFFS AND WILLIS LAW SHOULD BE SANCTIONED PURSUANT TO THE COURT'S INHERENT POWER.

#### A. Legal Standard.

In addition to Rule 11 sanctions, "[t]he court has inherent power to sanction parties and their attorneys," when "the party or the attorney has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000)

23

(quoting <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 258–59 (1975)). Awards "made under the court's inherent power may be made against an attorney, a party, or both." <u>United States v. Prevezon Holdings, Ltd.</u>, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (citation and quotations omitted).

**B. Plaintiffs and Willis Law Have Engaged in Bad Faith Abuse of the Judicial Process.**

For all the reasons set forth above, the Court should exercise its inherent power to sanction Plaintiffs and Willis Law, who have engaged in a deliberate pattern of conduct that treats this Court as a tool of pressure rather than a forum for adjudication. That persistence, despite clear repeated notice of legal and factual defects, supports an inference of bad faith and reflects a willful misuse of the Court's processes.

Accordingly, the Court should exercise its inherent power to sanction Plaintiffs and Willis Law to prevent further abuse of the judicial process.

**POINT III**

**WILLIS LAW SHOULD BE REQUIRED TO PAY LIAKAS' ATTORNEY FEES PURSUANT TO 28 U.S.C. § 1927**

**A. Legal Standard.**

"An attorney. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes." <u>Roadway Exp., Inc. v. Piper</u>, 447 U.S. 752, 762 (1980). The decision to issue sanctions under either ground lies within this Court's broad discretion. See <u>Sorenson v. Wolfson</u>, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016), <u>aff'd</u>,

24

683 F. App'x 33 (2d Cir. 2017).

**B.  Willis Law Unreasonably and Vexatiously Multiplied these Proceedings.**

After this action was filed, Willis Law was placed on clear notice, through motion practice in this case and adverse judicial rulings in materially identical actions, that its RICO theory was legally and factually defective.  Rather than withdrawing or narrowing its claims, Willis Law multiplied the proceedings involving Liakas. While this action remained pending, Willis Law filed *two* additional civil RICO actions against Liakas itself, including one on January 27, 2026, each asserting a similar alleged scheme and enterprise. This conduct vexatiously multiplied the proceedings within the meaning of § 1927. Accordingly, Willis Law should be required to satisfy the attorneys' fees and expenses Liakas incurred as a result of that conduct.

## CONCLUSION

For the foregoing reasons, Liakas respectfully request that this Court grant this motion, require Plaintiffs and Willis Law to pay Liakas' attorneys' fees, and order further relief as the Court deems just and proper.

Dated: March 23, 2026
New York, New York

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN
LLP**

By:_____
James M. Catterson
Brianna S. Walsh
31 West 52nd Street
New York, NY 10019-6131
Phone: 212.858.1000
Fax:    212.858.1500
james.catterson@pillsburylaw.com
brianna.walsh@pillsburylaw.com

*Attorneys for Defendants*
*Liakas Law, P.C., and Dean N. Liakas*

26